ZIELINSKI v. EMPRESA HONDURENA de VAPORES et al.

United States District Court
S. D. New York.
June 2, 1953.

Archibald F. McGrath, New York City, for plaintiff.

Burlingham, Hupper & Kennedy, New York City (Eugene Underwood, New York City, of counsel), for defendant Empresa Hondurena de Vapores.

DIMOCK, District Judge.

Defendant Empresa Hondurena de Vapores, a Honduran corporation, which I shall call "Empresa", moves to dismiss the complaint as against it on the ground that the court has no jurisdiction of the action. The action is brought by the third mate of the Orotava, a vessel operated by Empresa on a time charter to defendant United Fruit Company. He sues under the Jones Act, 46 U.S.C. § 688, for damages arising from personal injuries suffered on July 6, 1949, while the ship was in the harbor of Puerto Armuelles, Panama.

Plaintiff, who was at the time of the accident a citizen of Poland but a resident of the United States who had taken out his first citizenship papers, applied in New York to Agencia Maritima Hondurena for work. The Agencia, which represented Empresa in New York, had him examined there by a United Fruit Company doctor and gave him a position as third mate on the Orotava, directing him to report at Mobile, Alabama. He went to Mobile and signed the ship's articles there. She was of Honduran registry and the articles, expressed in both Spanish and English, described a voyage from "any Caribbean or United States Ports * * * and back to a final port of discharge in the coast ports of Rep. Honduras for a term of time not exceeding three (3) calendar months." The articles were dated May 17, 1948, and plaintiff signed them on February 18, 1949.

The ship proceeded to Puerto Cortez, Honduras, where, on February 26, 1949,

the articles were terminated and plaintiff signed off. On February 27, 1949, new articles in similar form for a voyage to a final port of discharge in Honduras were opened and signed by plaintiff. On May 17, 1949, at Puerto Cortez, these articles were terminated and plaintiff signed off. On May 18, 1949, new articles in similar form for a voyage to a final port of discharge in Honduras were opened and signed by plaintiff. He was injured before the articles opened on May 18, 1949, were terminated.

Each of these articles provided:

"10. It is specifically agreed and understood that the rights and obligations of persons signing these articles, while on board the ship or in its service or in respect of any damages, injuries, illness or death occurring while under these articles, shall be governed and determined exclusively by the laws of the Republic of Honduras as set forth in Art. 53 of the Organic Law of the National Merchant Marine, the Code of Commerce, the Civil Code, and other laws of the said Republic applicable thereto, regardless of where these articles are entered into and regardless of where the events giving rise to such rights or obligations may occur. Said Art. 53 provides as follows:

'Art. 53—Rights and compensations granted in this law to seamen making up the crew of national merchant vessels, replace and exclude whatsoever other rights, privileges, compensations, indemnities or actions which may be demanded from the employer or from the vessel itself, by reason of illness, injury or death of the seaman, and neither the employer nor the vessel shall be liable or compelled to pay under other laws of the Republic, or of the country of nationality of the victim, or of any other country, other damages, compensations or indemnities for the said causes than those expressly established in this law.

'The employer shall state the text of this article in the "Articles of Agreement" as an integral part and condition of the contract of engagement of the crew.' "

The ship was engaged in trade between Central American and United States ports. The United Fruit Company, an American corporation to which the ship was time-chartered, owned all of the stock of Empresa.

The recent decision of the United States Supreme Court in Lauritzen v. Larsen, 1953, 73 S.Ct. 921, is of great help in determining the perplexing question of the application of the Jones Act. Mr. Justice Jackson lists seven connecting factors regarded as significant in determining the law applicable to a claim of actionable wrong: 1. Place of the wrongful act. 2. Law of the flag. 3. Allegiance or domicile of the injured. 4. Allegiance of the defendant shipowner. 5. Place of contract. 6. Inaccessibility of foreign forum. 7. The law of the forum.

The last three of these connecting factors were substantially eliminated by the Lauritzen decision from cases of this kind. As to place of contract, Mr. Justice Jackson said, "We do not think the place of contract is a substantial influence in the choice between competing laws to govern a maritime tort". As to inaccessibility of foreign forum he said, "it is not persuasive as to the law by which it shall be judged." As to the law of the forum he said, "Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable."

That leaves as possibly significant: place of the wrongful act, which was Panama; law of the flag, which was Honduras; allegiance or domicile of the injured, which was Poland or United States, and allegiance of defendant shipowner, which was nominally Honduras, although plaintiff asks that effect be given to the ownership of all of the shipowner's stock by a United States corporation.

It thus appears that if effect is to be given to the Jones Act it must be because

of the United States domicile of the plaintiff and the United States ownership of the stock of the shipowner.

While the Supreme Court in Lauritzen v. Larsen ruled out the significance of only three connecting factors I do not understand that that court intended to express the opinion that any or even all of the remaining four were controlling. Thus, even though Justice Jackson said in discussing the plaintiff's domicile factor, "each nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support", I do not think that the court intended to disapprove O'Neill v. Cunard White Star, 2 Cir., 160 F.2d 446, certiorari denied 332 U.S. 773, 68 S.Ct. 56, 92 L.Ed. 358, which withheld application of the Jones Act in the case of an alien seaman who had declared his intention to be naturalized in the United States but who was lost on the high seas in the service of a foreign company under a foreign flag.

With respect to the factor of allegiance of defendant shipowner we have the decision in Gerradin v. United Fruit Co., 2 Cir., 60 F.2d 927, certiorari denied 287 U.S. 642, 53 S.Ct. 92, 77 L.Ed. 556, in which the court applied the Jones Act in favor of a United States citizen where the shipowner was a United States national even though the ship was under foreign registry.

That decision would be authority for the application of the Jones Act in the case at bar if the Orotava here had been owned directly by the United Fruit Company instead of being owned by Empresa, a Honduran corporation all of whose shares were, in turn, owned by the United Fruit Company. I do not think that the distinction makes a difference. The court is not asked to cast liability upon the United Fruit Company by ignoring the corporate existence of Empresa. It is asked to cast liability upon Empresa as though it were a United States, rather than a Honduran, corporation. There is in the statute involved in Central Vermont Transp. Co. v. Durning, 294 U.S. 33, 55 S.Ct. 306, 79 L.Ed. 741, an expressed legislative policy that for the purposes of that statute a ship owned by a United States corporation all of whose stock is owned by a foreign corporation shall not be treated as a United States ship. It is my belief that the court should give effect to the nationality of the actual control of the ship particularly in a case like this where the claimant is domiciled in the United States.

The motion is denied.