**Stavros MOUTZOURIS, Plaintiff,**

v.

**NATIONAL SHIPPING & TRADING CO. and Monteverde CIA. Armadora S.A., Defendants.**

United States District Court
S. D. New York.

May 22, 1961.

Lippert, Gordon, Rosenberg & Miller, New York City, for plaintiff, Herbert Lebovici, New York City, of counsel.

Poles, Tublin & Patestides, New York City, for defendants, Christ Stratakis, John G. Poles, New York City, of counsel.

DAWSON, District Judge.

In this action the original motion was one for an order declining jurisdiction and dismissing the action. It appears that plaintiff is a resident of Greece who was engaged in Greece to serve as a fireman on board the SS National Leader, which was a Liberian Flag vessel. The vessel sailed from Greece in June, 1960, and proceeded to Haifa, Israel, where she loaded a cargo of cement for discharge at Bridgeport, Connecticut and Trenton, New Jersey. During this voyage, while the ship was not in territorial waters of the United States, the plaintiff was injured when he slipped and fell down a ladder going to the engine room. Thereafter the vessel arrived at Bridgeport, Connecticut, and plaintiff was taken to a local doctor who arranged for his hospitalization at the Bridgeport Hospital for three days, after which he returned to the vessel. The ship then sailed for Trenton, New Jersey, where plaintiff left the ship and proceeded to New York City

---

4. For some comments as to problems likely to arise under the Virginia Uninsured Motorist Act, see 16 Wash. & Lee L.Rev. 134.

where he retained counsel and commenced this action. Apparently he was deported from the United States and is now in Greece. At the time he signed the Articles on the ship he entered into a written agreement that any disputes arising out of any accident should be determined under the Greek law.

The Court, in a memorandum opinion dated March 7, 1961, 196 F.Supp. 482, in the exercise of its discretion, declined jurisdiction in the case, conditioning such dismissal upon agreement by the defendants to accept service in Greece and posting $30,000 as security for any judgment which might be awarded in Greece.

Plaintiff thereafter moved for reargument. Oral reargument was held and briefs were submitted.

The basis of plaintiff's motion for reargument is that the Jones Act (46 U.S. C.A. § 688) is applicable in this case and the Court, therefore, is without discretion to decline jurisdiction. Plaintiff urges that the Jones Act is applicable, irrespective of all other factors in the case, because of the allegation in the complaint that "defendants are corporations wherein the beneficial owners of the stock of said corporations are citizens of the United States."

The Supreme Court in Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 set forth and analyzed the factors to be considered in determining whether or not the Jones Act should be applied. The factors were (1) the place of the wrongful act, (2) the law of the ship's flag, (3) the allegiance or domicile of the injured seaman, (4) the allegiance of the shipowner, (5) the place where the Ship's Articles were signed, (6) the inaccessibility of a foreign forum, and (7) the law of the forum.

The Supreme Court directed that application of the Jones Act should be determined from a weighing of the consequences of these connecting factors as between the shipping transaction and the national interest.

■ Under the analysis of the Lauritzen case this is certainly a case wherein jurisdiction should be declined. However, this still leaves open the question as to whether an allegation in the complaint that the beneficial owners of the stock of the corporations owning the ship are American citizens makes it imperative that the Court take jurisdiction over this action as a Jones Act case. Does American stock ownership, without more, suffice for application of the Jones Act?

In recent years this issue has been considered five times within this District.

Argyros v. Polar Compania De Navegacion Ltda., D.C.S.D.N.Y.1956, 146 F. Supp. 624, and Mproumeriotis v. Seacrest Shipping Co., D.C.S.D.N.Y.1957, 149 F. Supp. 265 held that where the only United States contact was American stock ownership of the respondent corporation the Jones Act would not be applied to what is otherwise a foreign transaction.[1] But Zielinski v. Empresa Hondurena de Vapores, D.C.S.D.N.Y.1953, 113 F.Supp. 93, Bobolakis v. Compania Panamena Maritima San Gerassimo, S.A.D.C.S.D. N.Y.1958, 168 F.Supp. 236 and Rodriguez v. Solar Shipping Ltd., D.C.S.D.N.Y.1958, 169 F.Supp. 79, all stated that where stock ownership and control was held by American citizens the Jones Act would apply.

In this latter group of three cases, in addition to stock ownership, there were other factors favoring the Jones Act. For example, in Zielinski the court said, "If effect is to be given to the Jones Act it must be because of the United States domicile of the plaintiff and the United States ownership of the stock of the shipowner." 113 F.Supp. at pages 94–95. In Bobolakis the plaintiff was engaged as a crew member in the port of Baltimore. In the Rodriguez case the libellant alleged not merely majority stock ownership by United States citizens but also alleged operation and control of the vessel by citizens of New York.

---

[1]. In Mproumeriotis the fact that the Articles were signed in an American port was held immaterial, pursuant to Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254.

In Bartholomew v. Universe Tank Ships Inc., 2 Cir., 1959, 263 F.2d 437 the Court of Appeals considered these divergent lines. The Bobolakis-Rodriguez position was apparently accepted by the Circuit and Mproumeriotis and Argyros were questioned.[2]

Plaintiff seeks a reversal of the Court's previous opinion on the ground that Bartholomew determined that the fact that a respondent shipping company was owned or controlled by American stockholders was sufficient in and of itself to warrant an application of the Jones Act. However, in Bartholomew the court did not conclude that the Jones Act was applicable solely because respondent corporation had American stockholders. The court held that in order for the Jones Act to be applicable there must be something between minimal and preponderant contacts with this jurisdiction. Judge Medina said:

"Hence it must be said that in a particular case something between minimal and preponderant contacts is necessary if the Jones Act is to be applied. Thus we conclude that the test is that 'substantial' contacts are necessary." (At page 440.)

The court in Bartholomew weighed the other contacts. For example, the court said:

"We also think the evidence overwhelmingly establishes that Bartholomew had sufficient presence and intent to be deemed a resident and domiciliary of the United States for the purpose of determining whether or not the Jones Act is applicable." At page 442.

The court was following the Lauritzen doctrine in weighing the various factors to determine whether jurisdiction was established under the Jones Act. It said: " * * * Accordingly, the decisional process of arriving at a conclusion on the subject of the application of the Jones Act involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial. Thus each factor is to be 'weighed' and 'evaluated' only to the end that, after each factor has been given consideration, a rational and satisfactory conclusion may be arrived at on the question of whether all the factors present add up to the necessary substantiality * * *." At page 441.

In the present case the only contact relied upon by the plaintiff is the fact that the beneficial owners of the stock of defendant corporations were citizens of the United States. The plaintiff himself was admittedly an alien and an alien resident. The accident took place outside the territorial jurisdiction of the United States. The plaintiff embarked upon his voyage in Greece. He agreed that any claims which he might have against the ship would be determined under Greek law. The plaintiff is now in Greece. The defendants are ready to condition the dismissal of the action upon their agreement to be sued in Greece and to post security for the satisfaction of any judgment rendered in Greece. The Court concludes that the "contacts" with this jurisdiction are not sufficiently "substantial" to apply the Jones Act.

This Court reaffirms its previous opinion of March 7, 1961, and in the exercise of its discretion declines jurisdiction of this case, conditioning such dismissal upon defendants' agreement to accept service in Greece and upon the posting of a $30,000 bond as security for any judgment which may be awarded in Greece. So ordered.

2. Mproumeriotis and Argyros are said to be of "doubtful validity" in footnote 4. 263 F.2d at page 443. However, the reason for this seems to be that the Circuit rejects the lower court's "apparent adoption" of the "unsatisfactory procedure of comparing present with absent factors." This is not the same as an authoritative statement that stock ownership, without more, is sufficient to make the Jones Act applicable.