Ioannis VOYIATZIS, Plaintiff,

v.

NATIONAL SHIPPING & TRADING CORPORATION and Noya Compania Naviera, S. A., Defendants.

United States District Court
S. D. New York.

Dec. 16, 1961.

George J. Engelman, New York City, for plaintiff.

Poles, Tublin & Patestides, New York City, for defendants. Christ Stratakis, John G. Poles, New York City, of counsel.

THOMAS F. MURPHY, District Judge.

In this action under the Jones Act, 46 U.S.C.A. § 688, and General Maritime Law for personal injuries by an alien seaman against a foreign shipowner, defendants raise by motion, before answer, the recurring troublesome problem of the applicability of United States laws in foreign-seamen and foreign-owner cases.

Plaintiff, a Greek subject, on March 9, 1960, at Piraeus, Greece, signed an employment agreement to proceed to the Liberian flag, S.S. National Unity, then at West Hartlepool, England, and owned by defendant Noya Compania Naviera, S. A., (a Panamanian corporation, all of whose stock is owned by a United States citizen) and there be engaged on board said ship as an oiler.

Defendant National Shipping & Trading Corporation is alleged in the plaintiff's complaint to be a Delaware corporation and as United States agent of defendant Noya, operated, managed, controlled, provisioned, manned and supplied the S.S. National Unity.

In the above agreement he is alleged to have contracted as follows:

"In the event of illness, accident or death during my employment, the Shipowner's obligations with regard to my maintenance, cure and compensation for damages shall be determined by the present Greek Collective Agreement for Employment on board Ocean going Vessels, dated March 15, 1954, as well as the Greek statutes and common law.

"For any and all disputes arising under the foregoing, as well as for any other disputes dealing with my wages and lodging, absolute and exclusive jurisdiction will lie with the Greek courts."

In the articles he signed aboard the S.S. National Unity are the following two paragraphs, translated from the Greek text:

"*Illnesses, Accidents, Disputes.*

"In the event of illness, accident or death during my employment, the shipowner's obligations with regard to my maintenance, cure and compensation for damages shall be determined by the present Greek Colelctive Agreement for Employment on board Ocean going Vessels, dated March 15, 1954, as well as the Greek statutes and common law.

"For any and all disputes arising under the foregoing, as well as for any other disputes dealing with my wages and lodging, absolute and exclusive jurisdiction will lie with the Greek Courts."

"*Arbitration.*

"Any difference of opinion existing between the Master and the crew with regard to the present Articles and Work Agreement, wages or working conditions on board the vessel shall be determined by the competent representative of Greece."

The particular page of the articles he signed was in English and noted the names of the crew, their ratings, salaries, place of sign-on, discharge and comments by the master. It should be observed that all but two of the crew were Greek (the other two were Irish).

The S.S. National Unity proceeded with plaintiff on board from England to Venezuela and returned to England; thence to Brazil; Baltimore, Maryland; the Barbados; Montreal, Canada; Detroit, Michigan; Genoa, Italy; Spain, and to Boston, Massachusetts. In Boston on January 29, 1961, while plaintiff was applying a torch to a frozen steam line pursuant to orders, the line burst causing the injuries of which he com-

plains. He was hospitalized at the United States Public Health Hospital in Boston and after discharge was repatriated to Greece where he is at present.

Defendants' motion is threefold: (1) to dismiss on the ground that the parties have contracted to resolve their disputes in Greece; (2) in the exercise of the court's discretion to dismiss on the ground of *forum non conveniens*, and (3) that so much of the action as relies on the Jones Act should be dismissed because such statute is inapplicable.

Plaintiff states that the questions raised by the motion are much broader. He characterizes them as: "The question present is this: Can an American citizen acquire a merchant vessel built in the United States, place ownership in a Panamanian Corporation (Noya) in which he is the sole stockholder, register the said vessel under the laws of the Republic of Liberia, operate the said vessel by a Delaware Corporation (National), in which he is the sole stockholder, have both the owning and operating corporation engage in business within the jurisdiction of this Court, operate his vessel in international trade to and from ports in the United States and outside the Republic of Greece and through the devise of having an agent execute a questionable employment contract in Greece with the plaintiff, where the actual shipping articles are executed in England, where the ship lies, deprive this Court of jurisdiction where the tort was committed in American territorial waters and thus relegate the plaintiff to both Greek Law and a Greek forum? Stated differently, can the defendants have the tax advantages of Liberian documentation of their vessel, Panamanian ownership, operation by an American corporation, and discard the law of the flag (Liberian law), the law of the owning corporation (Panamanian law), the law of the domicile of the real party in interest, the United States citizen, owning both corporations, (the law of the United States) and solely by the contractual device already referred to, ob-

tain the additional advantages of Greek law and a Greek forum?"

Undoubtedly the court does have jurisdiction of this action *in personam*. Romero v. International Terminal Operating Co., 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368; Lauritzen v. Larsen, 345 U.S. 571, 574–575, 73 S.Ct. 921, 97 L.Ed. 1254; The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152. The underlying question is not whether we should decline jurisdiction but rather— Is the Jones Act applicable? For, if the Act is controlling, we have no discretion to decline jurisdiction. Secondly, if the Jones Act is the governing statute, what is the effect of plaintiff's contract agreeing to be bound by Greek law in Greek courts? Is it against the public policy of the United States as defined in the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which is made applicable to actions under the Jones Act? For the reasons hereinafter stated we hold that plaintiff has stated a claim under the Jones Act and that by reason of that fact his prior agreement respecting Greek law becomes unenforceable.

The resolution of the problem of the applicability of the Jones Act involves a process of statutory construction now made crystal clear by our circuit's restatement of the general and undefined direction in Lauritzen for the "valuing" and "weighing" of the various facts or groups of facts that are said to be "points of contact" between the transaction and the states whose competing laws are involved. For in Bartholomew v. Universe Tankships, Inc., 2 Cir., 263 F.2d 437, 440–441 that court stated: "Hence it must be said that in a particular case something between minimal and preponderant contacts is necessary if the Jones Act is to be applied. Thus we conclude that the test is that 'substantial' contacts are necessary. And while as indicated supra one contact such as the fact that the vessel flies the American flag may alone be sufficient, this is no more than to say that in such a case the contact is so obviously substantial as

to render unnecessary a further probing into the facts.

" * * * Accordingly, the decisional process of arriving at a conclusion on the subject of the application of the Jones Act involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial. Thus each factor is to be 'weighed' and 'evaluated' only to the end that, after each factor has been given consideration, a rational and satisfactory conclusion may be arrived at on the question of whether all the factors present add up to the necessary substantiality. Moreover, each factor, or contact, or group of facts must be tested in the light of the underlying objective, which is to effectuate the liberal purposes of the Jones Act."

▆ The relevant factors here which we find constitute the requisite "substantial contacts" calling for the application of the Jones Act may be summarized as follows: (1) *The Place of the Wrongful Act.* Here plaintiff was injured in Boston aboard the S.S. National Unity, allegedly through negligence of defendants. This factor favors the application of American law. In Bartholomew the court characterized the place of the tort (there in American territorial waters) a "factor of significance." Accordingly, we do the same. (2) *Allegiance of Defendants.* Defendant shipowner is a Panamanian corporation, all of whose stock is owned by a United States citizen. Its general agent in the United States the co-defendant here, is a Delaware corporation. In conformity with the liberal policies of the Jones Act the court in Bartholomew pierced the corporate veil of the defendant shipowner and treated it as an American corporation. We follow suit. (3) *The Law of the Flag.* This is of cardinal im-

portance for Lauritzen teaches us that "the weight given to the ensign overbears most other connecting events in determining applicable law." (345 U.S. at 585, 73 S.Ct. at 930, 97 L.Ed. 1254). However, as that court further notes, "But it is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries. Confronted with such operations, our courts on occasion have pressed beyond the formalities of more or less nominal registration to enforce against American shipowners the obligations which our law places upon them." (p. 587, 73 S.Ct. p. 931). Having pierced the veil of defendant Panamanian corporation to treat that defendant as an American shipowner we have that much less hesitation in pressing beyond the formality of the convenient registration here under Liberian laws, and thus beyond the ship's flag. Even without disregard of nominal registration the choice of law based thereon would not favor defendants. (It appears that Liberia has adopted the General Maritime Law of the United States).[1] Defendants, forsaking their espoused loyalty to Liberia, insist on the contractual provision for Greek law and a Greek forum. And such insistence under the circumstances of this case compels closer scrutiny of the contract in light of the warning in Lauritzen where the court said, "We think a quite different result would follow if the contract attempted to avoid applicable law, for example, so as to apply foreign law to an American ship." (345 U.S. at 589, 73 S.Ct. p. 932).

The relevant factors here parallel those in Bartholomew in that, in both cases the tort occurred in this country and that, in effect, the shipowners were both Americans. In that case, unlike ours, the plaintiff alien "resided" in this

1. "Section 30 of the Liberian Maritime Law.—Insofar as it does not conflict with any other provisions of this Title, the non-statutory Maritime Law of the United States of America is hereby adopted as the General Maritime Law of the Republic of Liberia." Hatzoglou v. Asturias Shipping Company, S. A., D.C., 193 F.Supp. 195, 197.

country. Here plaintiff's contacts with this country (injury and treatment) were fortuitous and transitory. However, we have in this case the added factor that National Shipping, the co-defendant, is a Delaware corporation and allegedly operated, managed and controlled the S.S. National Unity. The factors present in Bartholomew which we referred to were held by our Court of Appeals to be, in the aggregate, substantial contacts beyond peradventure of doubt. The factors present in this case are not in the aggregate much less substantial, and we think it fair to state that there is here something more than minimal and something just short of preponderant contacts that exist.

■ Opposed to such substantiality is plaintiff's residence in, and allegiance to Greece (though we assume he did owe some allegiance to the Liberian flag while aboard ship), his agreement to look to Greek law and Greek courts for compensation, plus the likelihood that most of the testimony at trial would be in Greek. We accept, also, defendants' argument that the Greek forum would be available to plaintiff and that they would accept process and put up sufficient security. And, also, the proffered fact that under Greek law plaintiff would be justly compensated for his injuries. Except for the agreement, these facts are, on analysis, quite minimal. Plaintiff, although a Greek resident, has chosen this forum and his choice should not be lightly disregarded merely because defendants are willing to be sued elsewhere. If the Jones Act is applicable it is of little significance where the plaintiff resides; that the testimony of plaintiff and other witnesses probably will be in Greek is, also, in our opinion, of little significance. We have, as I am sure a host of other judges in the federal courts have, tried cases involving the use of interpreters with no great difficulty. In the instant case defendants presumably had no difficulty in taking plaintiff's deposition and in all likelihood the witnesses testimony too, being seamen, could be and will be taken by deposition. The only troublesome factor is plaintiff's agreement to look to the law and courts of Greece, which we have assumed, contrary to plaintiff's deposition testimony, to have been signed by him with full knowledge in the premises. If such contract was fairly made and otherwise reasonable, it would seem that the plaintiff should be relegated to the law and forum which the parties manifestly contemplated, except as such contract may clash with our public policy. In this connection it appears to be the settled law that the ancient animosity to giving effect to contractual stipulations giving exclusive jurisdiction to foreign courts is on the wane, at least with respect to commercial actions, and that such agreements are honored if reasonable. See Wm. H. Muller & Co. v. Swedish American Line, Ltd., 224 F.2d 806, 56 A.L.R. 2d 295 (2d Cir., 1955); Murillo LTDA. v. The Bio Bio, etc., D.C., 127 F.Supp. 13, aff'd 227 F.2d 519 (2d Cir., 1955). These cases did not involve a seaman's agreement to limit himself exclusively to a specific jurisdiction for the purposes of personal injury claims. Seamen are traditionally wards of the admiralty, partly, it is said, because of their alleged improvident nature and the hazardous nature of their calling, and in view of the special treatment generally accorded them in the law, it is not at all surprising that agreements by them similar to that here involved, though contained in the shipping articles, have at times simply been ignored by the courts. See Southern Cross S.S. Co. v. Firipis, 285 F.2d 651 (4th Cir., 1960) cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859; Retzekas v. Vygla S.S. Co., 193 F.Supp. 259 (D.R.I., 1960); Zielinski v. Empressa Hondurena de Vapores, 113 F. Supp. 93, 94 (S.D.N.Y., 1953), cf. Strathearn S.S. Co. v. Dillon, 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607. In Lauritzen the seaman plaintiff and shipowner were Danish nationals, the ship flew the Danish flag and it was the law of the flag that was specified in the articles signed by the plaintiff as the law that would govern in actions for personal injuries.

Substantial contacts with this country were clearly lacking in that case. It is our belief that in any case where substantial contacts exist and the Jones Act therefore applicable, it will be applied notwithstanding a provision for exclusive foreign jurisdiction. To enforce such agreements would run counter to the clearly expressed policy applicable to shipowners who are subject to the Jones Act. That policy is set out in the Federal Employers' Liability Act (incorporated into the Jones Act by reference) as follows: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U.S.C.A. § 55.

The only contact this transaction had with Greece, of any importance, was plaintiff's residence there. The ship never called there; the shipowner and the ship's agents are, for our purposes, both American nationals; the flag was Liberian. Yet the shipowner required a contractual stipulation that plaintiff's claims be governed according to the law of a country with which the ship and shipowner have no apparent connection. And if it be urged that the stipulation apparently was for the benefit of plaintiff, then in the complete absence of a countervailing basis supporting the shipowner's insistence that plaintiff be bound by it, plaintiff should readily be permitted to waive that provision. The prophecy of Lauritzen, supra, at 589, 73 S.Ct. at 931, from our view, comes into focus, and we do not hesitate to hold the agreement unenforceable. We find support for our position not only in a number of district court opinions [2] but also in the recent Fourth Circuit case, cited above, Southern Cross S.S. Co. v. Firipis, 285 F.2d 651, 654. There the plaintiff, a Greek seaman, was engaged in Greece to sign on the Margaritis, then in Alexandria, Egypt. The ship flew the Hon-

durian flag and the owner was a Liberian corporation whose stock was owned by Greeks and 20% by Americans (it was not ascertained whether the Greeks were United States residents or not). The ship's articles provided for Hondurian law (the law of the flag) to be applied. The plaintiff was injured while the ship was in dry dock in Norfolk, Virginia. Judge Sobeloff, for the court, refused to uphold the owner's contention that the law of Honduras be applied in view of the absence of any significant contacts with Honduras. He pointed out that if the law of the flag was to control the flag must not be merely one of convenience but must be bona fide, and added "the flag was nothing more than illusory." He, too, considered as an added factor the effective control of the vessel by American interests.

The two cases most earnestly relied upon by defendants, Hatzoglou v. Asturias Shipping Company, S.A., 193 F. Supp. 195 (S.D.N.Y., 1961) and Moutzouris v. National Shipping & Trading Co., D.C., 196 F.Supp. 482, reaffirmed on reargument, 194 F.Supp. 468 (S.D.N.Y., 1961) are distinguishable on their facts.

In Hatzoglou the ship's articles contained a similar agreement signed by the libellant, a Greek officer, residing in Greece, to be bound by Greek law in the courts of Greece, but the accident happened on the high seas and the vessel, although registered under Liberian law, was owned by a Panamanian corporation whose principal stockholders were *Greek*. The only contact with America was the treatment of the seaman in a California hospital. Moreover, no Jones Act claim was asserted. Judge Bryan held the district court to be an inappropriate forum to try the general maritime claim for injuries.

In Moutzouris there was a similar agreement to be bound by Greek law but the only real contact with America was through the alleged beneficial ownership of the Liberian flag vessel. The plaintiff

2. Bobolakis v. Compania Panamena Maritime San Gerassimo, 168 F.Supp. 236, 238 n. 4 (S.D.N.Y., 1958); Zielinski v.

Empressa Hondurena de Vapores, supra; Retzekas v. Vygla S.S. Co., supra.

was a subject and resident of Greece, he was engaged in and embarked on the voyage from Greece, he was injured outside the territorial waters of the United States and he received treatment in a Connecticut hospital for three days. Analyzing these factors, Judge Dawson held that they were not sufficiently substantial to apply the Jones Act. We would agree.

Accordingly, since we have no discretion to exercise insofar as the claim under the Jones Act is concerned, having held that statute applicable, defendants' motion addressed to that claim is denied in all respects.

With regard to the general maritime claim, we are satisfied that, in the interests of doing complete justice expeditiously, we should retain jurisdiction. Bobolakis v. Compania Panamena Maritime San Gerassimo, supra, 168 F. Supp. at 239. The claim is rightly joined with the Jones Act claim and both may properly be tried to a jury. Bartholomew v. Universe Tankships, Inc. supra, 263 F.2d at 453.

The motion is denied in its entirety.

This is an order. No settlement is necessary.