Emanuel **BRILLIS**, Plaintiff,

v.

**CHANDRIS (U.S.A.) INC.**, Greenville, S.A., Marifortuna Navegacion, S.A., and Chandris (London) Ltd., Defendants.

United States District Court
S. D. New York.
March 22, 1963.

Harry R. Schwartz, Brooklyn, N. Y., for plaintiff, Standard, Weisberg & Harolds, New York City, of counsel, Alan H. Buchsbaum, New York City, on the brief.

Poles, Tublin & Patestides, New York City, for defendants, Christ Stratakis, New York City, of counsel.

DAWSON, District Judge.

This is a civil action brought by a Greek seaman against four corporate defendants. Four causes of action are as-

serted under the General Maritime Laws of the United States, as amended by the Jones Act, 46 U.S.C.A. § 688, seeking recovery for: (1) an injury sustained by plaintiff; (2) aggravation thereof through improper medical attention; (3) maintenance and cure payments, and (4) penalty wages pursuant to 46 U.S.C.A. §§ 596 and 597. Two additional causes of action are asserted alternatively under the laws of Panama and Liberia.

Defendants have moved pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for an order declaring the Jones Act inapplicable, declining jurisdiction because the parties have agreed to litigate all claims in Greece and a finding of forum non conveniens. The three foreign defendants have also moved to set aside service of process upon them as being invalid.

It becomes unnecessary to determine the validity of process over the foreign defendants because, under the decisions hereinafter referred to, this Court, in its discretion, should decline jurisdiction.

The pleadings, depositions and affidavits submitted to the Court show the following facts to exist without substantial controversy:

The plaintiff is a subject and resident of the Kingdom of Greece. On or about December 19, 1960, he was engaged at the port of Piraeus, Greece, to serve as Chief Steward on board the Liberian vessel, S.S. ANGELIKI II. Plaintiff signed an employment contract with a Greek corporation not a party to this suit which was acting as agent for Chandris (London) Ltd., a defendant herein. The agreement, written in Greek, contained the following:

"The party who is being employed with these presents declares that, in the event of illness or accident or in case of the vessel's loss by shipwreck or otherwise, as a consequence of which, he would be entitled to compensation under the Greek Act 3816/1958 and the prevailing Greek Bargaining Agreement, the said compensation shall be made on the basis of the provisions of the present Greek Act 3816/1958 and the Greek Collective Bargaining Agreement of April 29, 1959 or any other Greek statutes or regulations amending or substituting the aforesaid provisions * * *. [A]ny dispute, claim or objection that may arise with regard to this Agreement or the Articles, shall be governed exclusively by the Greek law and the current Greek Collective Agreement and the Greek courts and specifically, those of the City of Piraeus, shall have exclusive jurisdiction in this regard, expressly precluding the application of any foreign law or regulation and the assumption of jurisdiction by any foreign courts of any other country except those of Greece."

Plaintiff was transported to Marseilles, France, where he joined the vessel and signed Ship's Articles on December 24, 1960. The ANGELIKI II sailed from Marseilles on January 27, 1961. While the vessel was proceeding from Yokohama, Japan, to San Pedro, California, the plaintiff slipped and fell, sustaining a fracture of the right femur. The accident occurred on June 9, 1961, when the ANGELIKI II was outside the territorial waters of the United States.

Thereafter, on June 28, 1961, when the vessel arrived at San Pedro, California, plaintiff was taken ashore and admitted to the Wilmington Community Hospital. He remained there until September 28, 1961, when he was discharged and repatriated to Greece.

Upon his arrival at Piraeus, Greece, on October 3, 1961, the plaintiff was given additional medical attention and maintenance payments in drachmas equivalent to $560.00. These treatments terminated in February 1962, when the plaintiff, dissatisfied with the treatment he was receiving, failed to appear for further examination. On May 7, 1962, plaintiff arranged passage to New York where he now resides on a temporary basis. While in New York the plaintiff has received additional medical attention.

The defendants in this action are (1) Greenville, S.A., a Panamanian corporation which owns the ANGELIKI II, (2) Marifortuna Navegacion, S.A., another Panamanian corporation, which was the bareboat charterer, (3) Chandris (London) Ltd., an English corporation which was the manager of the ANGELIKI II responsible for general operations of the vessel, and (4) Chandris (U.S.A.) Inc., a Delaware corporation, agents of Chandris (London) Ltd. and responsible for the servicing of the vessel when it called at American ports.

As stated above, defendants urge three grounds for dismissal: (1) inapplicability of the Jones Act, (2) an agreement to look to the courts of Greece, and (3) forum non conveniens. While each ground raises a separate issue of law, all must be resolved by weighing or valuing the various facts which constitute points of contact between the transaction and the United States. Despite the similarity of required proof, the three defenses are best treated separately.

The Supreme Court considered the applicability of the Jones Act in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Mr. Justice Jackson, writing for the majority, discussed the significance of (1) place of the wrongful act; (2) law of the flag; (3) allegiance of the domicile of the injured; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of the foreign forum, and (7) law of the forum. The Court of Appeals for the Second Circuit in Bartholomew v. Universe Tankships, Inc., 263 F.2d 437, 443 (1959) interpreted Lauritzen to mean that something between minimal and preponderant contacts is necessary if the Jones Act is to be applied. The court went on to point out that if the contacts are sufficient to apply the Jones Act a court may not in its discretion decline jurisdiction.

> "Moreover, this is not a matter resting in the discretion of the trial judge, as seems to have been thought to be the case here. The facts either warrant the application of the Jones

Act or they do not. Under 28 U.S.C. § 1331, once federal law is found applicable the court's power to adjudicate must be exercised."

Before attempting to apply the standards laid down in Lauritzen and Bartholomew to the facts of the instant suit, it is necessary to avert to an issue of fact raised by the motion papers.

The pleadings and affidavits indicate that there is no dispute as to the ownership and registry of the ship, but the complaint alleges that the ship's registry in Liberia is a "flag of convenience" and that Greenville, S.A. and Marifortuna Navegacion, S.A. are dummy corporations created by Chandris, London and Chandris, U.S.A. to circumvent the obligations imposed by American law. The defendants deny these allegations and assert by affidavit that all of the stockholders, officers and directors of Chandris, U.S.A. are Greek citizens residing in London or Greece, all of the stockholders and most of the directors of Chandris, London are likewise Greek citizens residing in London or Greece, none of the stock of Chandris, London is owned by Chandris, U.S.A. and that the stockholders, directors and officers of Greenville, S.A. are Greek citizens residing either in Greece or London.

Therefore, assuming arguendo, that the flag is one of convenience and that the two Panamanian corporations are merely dummies created for Chandris, London and Chandris, U.S.A., there is still no American beneficially interested in the activities of the ANGELIKI II.

An application of the criteria laid down in Lauritzen to the facts of this case establishes: the wrongful act was committed on the high seas; the ship flies the flag of Liberia; the injured owes allegiance to Greece; the allegiance of the owner is foreign no matter which defendant is deemed the true owner of the ANGELIKI II; the employment contract was executed in Greece and the Ship's Articles signed in France; the forum is not inaccessible to plaintiff who is Greek, and all the defendants are willing to post security to ensure their amenabil-

ity to process there; the law of the forum does not equate valid service of process with the necessity of imposing American law upon a maritime tort.

None of the enumerated factors indicates a connection between the tort and the laws of the United States except the incorporation of one of the defendants. In addition the ANGELIKI II was on her way to an American port in San Pedro, California, and the plaintiff has received medical attention in the United States. An affidavit submitted by the Chairman of Chandris, London, states that the ANGELIKI II has not called at an American port since September 5, 1961.

The principal factor relied upon by the plaintiff to establish the applicability of American law is the true ownership of the vessel. The Court in Lauritzen indicated that this is a critical factor.

> "But it is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries. Confronted with such operations, our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them." 345 U.S. 571, at page 587, 73 S.Ct. 921, at p. 931 (1953).

Many courts have held the Jones Act applicable where Americans have been shown to be the true owners, in spite of the absence of almost all other significant contacts with the United States. Pavlou v. Ocean Traders Marine Corp., 211 F. Supp. 320 (S.D.N.Y.1962); Zielinski v. Empresa Hondurena de Vapores, 113 F. Supp. 93 (S.D.N.Y.1953); Gerradin v. United Fruit Co., 60 F.2d 927 (2d Cir. 1932), cert. denied, 287 U.S. 642, 53 S.Ct. 92, 77 L.Ed. 556 (1932); Bobolakis v. Compania Panamena Maritima, etc., D. C., 168 F.Supp. 236, 1959 A.M.C. 697 (S.D.N.Y.1958).

It may be assumed for the purposes of this motion that the Chandris family, despite the creation of a bewildering maze of corporate entities, is the beneficial owner of the ANGELIKI II. None of these individuals is a citizen or resident of the United States. Chandris, U.S.A. is wholly owned and directed from without the United States. The deposition of James C. Murphy, the United States manager of Chandris, U.S.A., was taken by the plaintiff. He testified that there are only three employees of Chandris, U.S.A., and all work in an office located in New York City. The corporation acts as husbanding agent for many corporations having no connection with the Chandris family. It did not hire any of the crew of the ANGELIKI II, collect any of the freight, or arrange for either the hospitalization or repatriation of the plaintiff.

■ Viewing all the contacts of this maritime tort, both with the United States and foreign states, and giving each its appropriate weight and significance, it is clear that such contacts as there are with the United States are at best minimal and thus insufficient for the application of the Jones Act. Moutzouris v. National Shipping & Trading Co., 196 F.Supp. 482 (S.D.N.Y.1961), aff'd on reargument, 194 F.Supp. 468 (1961); Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); O'Neill v. Cunard White Star, 160 F.2d 446 (2d Cir., 1947).

■■ The second defense raised by defendants seeks to invoke the doctrine of forum non conveniens and is addressed to the discretion of the Court. It is unnecessary to set forth anew the factual grounds upon which the Jones Act was found to be inapplicable. All are relevant in determining whether to retain jurisdiction over this controversy. In addition, several other matters may here be given weight which are inappropriate in the context of the Jones Act. Voyiatzis v. National Shipping & Trading Corp., 199 F.Supp. 920 (S.D.N.Y.1961).

These additional considerations consist of the following: Plaintiff is Greek and does not speak English. All witnesses to the accident are likewise Greek, residing in that country and speaking only Greek. Medical records existing in the United States can easily be brought before a Greek tribunal. The only medical treatment with which plaintiff is dissatisfied occurred in Greece.

In a situation factually similar to the instant one, the Court of Appeals of this circuit said:

"It is prima facie undesirable that an overburdened District Court should conduct a trial in a personal injury action between foreigners, with all the evidence on the issue of liability and much of the evidence on damages given in a foreign tongue by witnesses equally or more available in the foreign forum, and with reliance having to be placed on expert testimony as to the governing law, when, as here, an adequate remedy is available in the country where both parties reside and to which the plaintiff will return." Conte v. Flota Mercante Del Estado, 277 F.2d 664, 667 (2d Cir., 1960).

It should be pointed out that the employment contract signed by the plaintiff agreeing to look solely to Greek courts and Greek law is fully valid. The American contacts must be substantial before a court will declare such an agreement void as against public policy. Lauritzen v. Larsen, supra; Hatzoglou v. Asturias Shipping Company, S.A., 193 F. Supp. 195 (S.D.N.Y.1961); Takemura & Co. v. The S.S. Tsuneshima Maru, 197 F.Supp. 909 (S.D.N.Y.1961); Krenger v. Pennsylvania R. Co., 174 F.2d 556 (2d Cir., 1949); Chemical Carriers, Inc. v. L. Smit & Co.'s Internationale Sleepdienst, 154 F.Supp. 886 (S.D.N.Y.1957); Wm. H. Muller & Co. v. Swedish American Line Ltd., 224 F.2d 806 (2d Cir., 1955), cert. denied, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955).

In light of all the factors discussed above, it is evident that this Court should exercise its discretion and decline jurisdiction on the grounds that this district is not the proper forum and Greece is. Plaintiff may then look to a Greek tribunal and Greek law as he agreed to do when he accepted employment on the ANGELIKI II.

The defendants are willing to abide a dismissal decree of this Court, conditioning such dismissal upon their agreeing to be sued in Greece, accepting service there and placing security for satisfaction of any judgment awarded in Greece.

Accordingly, this Court, in the proper exercise of its discretion, declines jurisdiction in this case, conditioning such dismissal upon the agreement of defendants to accept service in Greece and posting $20,000.00 as security for any judgment that may be awarded in Greece. So ordered.