Elias **TSAKONITES**, Plaintiff,

v.

**TRANSPACIFIC CARRIERS CORP.** and **Hellenic Lines, Ltd.,** Defendants.

United States District Court
S. D. New York.

March 4, 1965.

Lebovici & Safir, New York City, for plaintiff. Herbert Lebovici, New York City, of counsel.

Zock, Petrie, Sheneman & Reid, New York City, for defendants. Edwin K. Reid, New York City, of counsel.

COOPER, District Judge.

This suit arises out of personal injuries allegedly sustained by plaintiff.

Trial began on February 1, 1965. The parties then agreed in open court to divide the trial into two stages: (1) a determination by the Court whether the Jones Act (46 U.S.C. § 688) and the general maritime law (hereafter American law) are applicable, and (2) a resolution (if necessary) by the Court and jury of liability and damages.

Accordingly, the parties stipulated to facts relating to the issue of applicable law. These, relied upon by plaintiff to "make out a prima facie case" [see Transcript of Trial Proceedings (here-

after Transcript), February 1, 1965, p. 4], or more accurately, to be the basis of the Court's determination whether American law applies, were made part of the record as Court's Exhibit 1.

After oral argument, the parties submitted supplementary trial memoranda (in accord with leave of Court to do so until the close of the Court's day on February 3). Subsequently, a retyped copy of Court's Exhibit 1 was marked Court's Exhibit 2 and supporting exhibits were jointly marked Court's Exhibit 3.

On February 4, defendants belatedly attempted to submit proof of Greek law in order to show that a foreign forum was accessible and foreign law would accord plaintiff relief. See Evangelinos v. Andreavapor Cia. Nav., S.A. and the S.S. National Hope, 2 Cir., 1961, 291 F.2d 624. This offer was rejected by the Court in view of its untimeliness. (See Transcript pp. 1–11). Moreover, without regard to enforceability or applicability, stipulation 45 states that Greek law provides rights and remedies to Greek seamen injured aboard a Greek vessel. See Kontos v. S.S. Sophie C., E.D.Pa., 1964, 236 F.Supp. 664.

Plaintiff did not plead or request, either on oral argument or in his memoranda, that the Court take judicial notice or accept proof on foreign law so that any rights thus accorded plaintiff could be remedied in this forum should American law be found inapplicable. Plaintiff has not requested that the general maritime claims be transferred to the Admiralty Docket.

Plaintiff has chosen to stand on American law. We thus direct out attention to the basic issue of whether there are suf-ficient facts before this Court to justify the application of American law.

## APPLICABILITY OF AMERICAN LAW

The Court has carefully reviewed Court's Exhibits 1–3, the parties' memoranda and the applicable law. There is no need to fully reiterate the detailed stipulations of fact.

Briefly, plaintiff is a Greek citizen and domiciliary who served as a seaman aboard the S.S. Hellenic Spirit. He claims damages for personal injuries allegedly sustained aboard the vessel on September 26, 1959, in New York harbor, as a result of defendants' negligence and the unseaworthiness of the ship. He also seeks wages until the end of the voyage, maintenance and cure, and recovery for wilful failure to treat and provide maintenance. These latter claims cover, in part, a period after plaintiff returned to Greece.

The S.S. Hellenic Spirit, owned by defendant Transpacific Carriers Corp. (hereafter Transpacific), a Panamanian corporation, was operated and controlled by defendant Hellenic Lines, Ltd., (hereafter Hellenic), a shipping concern incorporated under the laws of Greece. She flew the Greek flag.

 Despite admitting by paragraph 4 of its amended answer that it employed plaintiff, Transpacific contends that plaintiff was in fact employed by Hellenic (see stipulations 41–2, and supporting exhibit 8 in Court's Exhibit 3). We agree. Neither Hellenic nor plaintiff now appear to contend otherwise.[1]

 We cannot find, as plaintiff contends, that the S.S. Hellenic Spirit was

---

1. Plaintiff's complaint bases jurisdiction solely on the Jones Act. The finding of an employer-employee relationship is necessary to establish a claim on which relief thereunder can be granted. See 2 Norris, The Law of Seamen §§ 666, 682. Failure of plaintiff to prove such a relation requires dismissal of the Jones Act claim [and the pendent maritime claims] as against Transpacific. See Romero v. International Terminal Operating Co.,

1958, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed. 2d 368; Bartholomew v. Universe Tankships, Inc., 2 Cir., 1958, 263 F.2d 437, 443. Even if Transpacific were plaintiff's employer, American law would be inapplicable. See Kontos v. S.S. Sophie C., supra, p. 640; p. 640 infra. This would be equally true as to the maritime claims had diversity jurisdiction, belatedly argued by plaintiff, been found to exist. See p. 640 infra.

a "runaway vessel"—one operated under a flag of convenience. In Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254, the Supreme Court noted that some American shipowners sought foreign registration of their vessels for the purpose of avoiding American law. Courts have had no difficulty disregarding papier maché formalities of nominal foreign registration to enforce against American shipowners or operating companies the obligations created by American law. Thus, the Jones Act was applied in Bartholomew v. Universe Tankships, Inc., 2 Cir., 1958, 263 F.2d 437, cert. denied, 1959, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030, where American citizens were the shareholders of a Panamanian corporation which in turn held the stock of defendant shipowner, a Liberian corporation; in Carroll v. United States, 2 Cir., 1943, 133 F.2d 690, where the vessel was owned by the United States whose agent operated it under a Panamanian flag; and in Gerradin v. United Fruit Co., 2 Cir., 1932, 60 F.2d 927, where the vessel, owned by a New York company, was operated by a New Jersey corporation as demise charterer under a Honduran flag.

While each case must be decided on its own facts, these cases teach that beneficial ownership and control of the vessel by American citizens or corporations will be given legal significance despite schemes, however complex or imaginative, to avoid American laws through the formalities of foreign registration and operation. See also: Southern Cross S.S. Co. v. Firipis, 4 Cir., 1960, 285 F.2d 651, 84 A.L.R.2d 895, cert. denied, 1961, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859; Bobolakis v. Compania Panamena Maritima San Gerassimo, S. A., S.D.N.Y., 1958, 168 F.Supp. 236; and Zielinski v. Empress Hondurena De Vapores, S.D.N.Y., 1953, 113 F.Supp. 93.

At the outset, we cannot find that Hellenic's Greek incorporation or the vessel's flying of the Greek flag are mere formalities.

We reject the implication made by plaintiff on oral argument and in his supplementary memorandum that contacts with the United States sufficient to treat a foreign corporation as American for jurisdictional purposes under 28 U.S.C. § 1332(a) (2) would also require a finding of contacts substantial enough to treat a foreign corporation as American for Jones Act purposes. See Batholomew v. Universe Tankships, Inc., supra, 263 F.2d at 442.

Hellenic had significantly more than formal business activities in Greece and other foreign countries. See stipulations 12, 13, 14, 18, 19, 34, 36, 37.

The S.S. Hellenic Spirit was operated in the Red Sea Service. (Stipulation 17.) Red Sea Service vessels call at Greek ports to crew the vessels (as in this case) and to load or discharge available cargo (Stipulation 18.) It is true that the ship's itinerary during the voyage in question does not show that it carried cargo to or from a Greek port, but in view of the total circumstances in this case, that is insufficient to regard its Greek flag as illusory. Cf. Stipulation 40.

Even had plaintiff shown the registration of the vessel under Greek law to be but a formality, nothing in the stipulations supports plaintiff's contention that each of the defendants was "entirely controlled and operated by citizens of a state of the United States." (Complaint ¶5).

This is not a case such as Voyiatzis v. National Shipping & Trading Corp., S.D. N.Y., 1961, 199 F.Supp. 920, wherein a Greek seaman was entitled to Jones Act remedies in a suit against a Panamanian corporation, which was the shipowner and all of whose stock was owned by a United States citizen, and against a Delaware corporation, its general agent.

Nor does this case require the Court to state that either stock ownership of the corporation owning the vessel by United States citizens, or control of the vessel by United States citizens, standing alone, requires application of American law.

See Plaintiff's Supplementary Trial Memoranda, Point III, pp. 11–12; Bartholomew v. Universe Tankships, Inc., supra, 263 F.2d at 440, 443 n. 4; Mpanpouros v. Steamship Auromar, D.C.Md., 1962, 203 F.Supp. 944.

While Mr. Pericles Callimanopulos, Hellenic's general manager and owner of 95% of its stock, was a legal resident of the United States at the time of the accident in suit, he was ineligible for American citizenship and had not declared an intention to apply when and if eligible. He was a Greek citizen, as were all of the officers and directors of Hellenic. Except for Mr. Callimanopulos and his son, those officers and directors all resided in Greece.

By analogy, plaintiff cites Gambera v. Bergoty, 2 Cir., 1942, 132 F.2d 414, where the seaman's legal residence in the United States, without actual American citizenship, was apparently accorded significance in determining to apply the Jones Act. Like other pre-Lauritzen cases, the controlling considerations in the decision were unclear. Indeed, in O'Neill v. Cunard White Star, Ltd., 2 Cir., 1947, 160 F.2d 446, the Jones Act was held inapplicable despite seaman's long residence in the United States. In Taylor v. Atlantic Maritime Co., 2 Cir., 1950, 179 F.2d 597, at 600. Judge Learned Hand suggests that Gambera and other cases can be explained by looking to the situs where the seaman signed onto the vessel, a factor given little weight in post-Lauritzen cases and a contact absent here. See Berendson v. Rederiaktiebolaget Volo, 2 Cir., 1958, 257 F.2d 136; Smith v. Furness Withy & Co., S.D.N.Y., 1953, 119 F.Supp. 369; Boczek, Flags of Convenience 180–182 (1962); Note, "Admiralty and Choice of Law: Lauritzen v. Larsen Applied," 47 Va.L.Rev. 1400 (1961).

Whatever may be the vitality of cases giving weight to a seaman's legal residence in the United States, despite foreign citizenship, none has been found piercing the citizenship of foreign nationals who reside here and own controlling stock in a shipping concern incorporated under the laws of a foreign country.

On the facts of this case, we would not be justified in holding that there is "American ownership and/or control" of Hellenic sufficient to support a finding that the S.S. Hellenic Spirit flew a flag of convenience. See Lauritzen v. Larsen, 345 U.S. at 581, 73 S.Ct. 921, 97 L.Ed. 1254; Cruz v. Harkna, S.D.N.Y., 1954, unreported memorandum, # 21103, Admiralty Docket No. 176–315, noted in 122 F.Supp. 288.

We turn to the principles enunciated in Lauritzen v. Larsen, supra, to determine the applicable law. There, after a statement of general principles, 345 U.S. at 583, 73 S.Ct. at 928, the Court considered "several factors which, alone or in combination, are generally conceded to influence choice of law to govern * * a maritime tort claim." Listed and discussed were: (1) the place of the wrongful fact; (2) the law of the flag; (3) allegiance or domicile of the injured party; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of foreign forum and (7) the law of the forum. Of these factors, those numbered (2), (3) and (4) were accorded particular significance.

Plaintiff, however, would have us adopt the approach employed in Bartholomew v. Universe Tankships, Inc., supra. In Tjonaman v. A/S Glittre, 2 Cir., 340 F.2d 290 (decided January 11, 1965), the Court of Appeals for the Second Circuit noted that Bartholomew had not limited its broad discussion of approach to the flag of convenience case then before the Court. Moreover, Bartholomew did consider and apply the Lauritzen factors in the context of the "substantial contacts" test it developed.

Brillis v. Chandris (U.S.A.) Inc., S.D. N.Y., 1963, 215 F.Supp. 520, 522 and Pavlou v. Ocean Traders Marine Corp., S.D.N.Y., 1962, 211 F.Supp. 320, 324, had

interpreted Bartholomew as limiting the dominating importance of the law of the flag to cases with facts similar to the Lauritzen case. The Court of Appeals, however, found that McCulloch v. Sociedad Nacional, 1963, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547, leaves "no doubt" that the starting point for weighing and evaluating the factors governing the choice of law is consideration of the law of the flag.

In Lauritzen v. Larsen, supra, the Supreme Court said that.

> Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag.

In Tjionaman, supra, the Court of Appeals stated, as the ultimate issue,

> " * * * whether the substantiality of other existing factors establishing a connection with the United States is sufficient to outweigh the 'venerable and universal rule.' "

In this case, we find that they are not.

Here, defendants point to: (1) the vessel was flying the Greek flag; (2) Hellenic is a bona fide Greek corporation, all of whose stock is owned by Greek citizens; (3) plaintiff, a Greek citizen, who boarded the vessel at a Greek port, signed an employment contract at Piraeus, Greece, specifying it was governed exclusively by Greek laws and providing for any claims arising under the agreement to be tried exclusively by the Greek Law Courts; and (4) although plaintiff would not stipulate as to enforceability or applicability, Greek law provides certain rights and remedies to Greek seamen injured aboard a Greek vessel.

Plaintiff, on the other hand, says the law of the flag and other relevant factors are outweighed by the substantiality of the facts that (1) the accident occurred in territorial waters of the United States; (2) the effective control of the vessel on which plaintiff was injured was by legal residents of the United States through Hellenic; (3) Hellenic's executive office in New York carried on and centralized extensive business operations in this country and held accountable its agents abroad.

■ We note first that had other operative facts entitled plaintiff to invoke the benefits of American law, an agreement relinquishing or waiving such rights would not necessarily be given legal effect. See Southern Cross SS. Co. v. Firipis, supra; Pavlou v. Ocean Traders Marine Corp., supra; and Voviatzis v. National Shipping & Trading Corp., supra.

Next, the fact that the accident occurred in territorial waters is entitled to little weight. As the Supreme Court noted in Romero v. International Terminal Operating Co., 1958, 358 U.S. 354, 384, 79 S.Ct. 468, 486, 3 L.Ed.2d 368:

> In Lauritzen v. Larsen the injury occurred in the port of Havana and the action was brought in New York. Romero was injured while temporarily in American territorial waters. This difference does not call for a difference in result. * * * The test of location of the wrongful act * * * is of limited application to shipboard torts * * * because of the varieties of legal authority over waters she may navigate. * * * [S]uch a rule does not fit the accommodations that become relevant in fair and prudent regard for the interests of foreign nations in the regulation of their own ships and their own nationals, and the effect upon our interests of our treatment of the legitimate interests of foreign nations.

It was purely fortuitous that the accident occurred here rather than in Cienfuegos, Cuba, where the voyage terminated, or on the High Seas, en route to Calcutta.

Plaintiff's second and third points merit deeper consideration. We have already discussed why the facts here do not

warrant piercing the corporate veil and then looking behind the Greek citizenship of Hellenic's stockholders, officers and directors. Plaintiff, however, urges that the effective control of Hellenic by a legal resident of the United States, coupled with Hellenic's business activities here generally, are "substantial contacts" under the doctrine of Bartholomew v. Universe Tankships, Inc., supra, especially when considered in its application in Pavlou v. Ocean Traders Marine Corp., supra.

In Pavlou, the Court did say that "the base of operations of the persons directing the operations of the vessel is a factor making the Jones Act applicable." However, the Court there found that the management of the vessel, which was flying a Liberian flag and owned by a Liberian corporation created for that purpose, had been turned over to a company which operated as and was in fact a domestic corporation of the State of New York.

Pavlou, moreover, relied on Southern Cross SS. Co. v. Firipis, supra, a Fourth Circuit flag of convenience case wherein American citizens were stockholders beneficially interested in the operation of the vessel—a factor definitely not present here.

Finally, the vitality of Pavlou in diluting the weight to be given the law of the flag was diminished in Tjonaman v. A/S Glittre, supra, as stated above.

In Lauritzen, emphasis was not given to the "base of operations" factor. Respondent there had put stress on the assertion that the petitioner's commerce and contacts with the United States were frequent and regular, thus sustaining a basis for applying the Jones Act. The Supreme Court responded that (345 U.S. at 581, 73 S.Ct. at 928)

* * * [T]he virtue and utility of sea-borne commerce lies in its frequent and important contacts with more than one country. If, to serve some immediate interest, the courts of each were to exploit every such contact to the limit of its power, it is not difficult to see that a multiplicity of conflicting and overlapping burdens would blight international carriage by sea. Hence, courts of this and other commercial nations have generally deferred to a non-national or international maritime law of impressive maturity and universality.

Moreover, maritime law

* * * in such matters as this does not seek uniformity * * *. [I]t aims at stability and order through usages which considerations of comity, reciprocity and long-range interest have developed to define the domain which each nation will claim as its own. [345 U.S. at 582, 73 S.Ct. at 928.]

So it is here, for even though we give full consideration to the "base of operations" factor as presented by the circumstances in this case, and view the other contacts with the United States, their totality is insufficient to outweigh "the most venerable and universal rule" that the law of the flag controls matters relating to the internal economy or discipline of the ship. See Tjonaman v. A/S Glittre, supra; Mpampouros v. Steamship Auromar, supra.

### JURISDICTION

We note in passing that defendants contend we are without jurisdiction.

Plaintiff asserts a substantial claim under the Jones Act. As stated in Romero v. International Terminal Operating Co., supra, 358 U.S. at 359, 79 S.Ct. at 473:

* * * Such assertion alone is sufficient to empower the District Court to assume jurisdiction over the case and determine whether, in fact, the Act does provide the claimed rights. "A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact." Lauritzen v. Larsen, 345 U.S. 571, 575, 73 S.Ct. 921, 97 L.Ed. 1254.

Had the Jones Act been applicable, this Court would have regarded the claims under the general maritime law as "pendent." See Romero v. International Terminal Operating Co., supra.

Although neither raised nor pleaded in oral argument, plaintiff's pre-trial and supplementary trial memoranda assert jurisdiction by reason of diverse citizenship of the parties. Plaintiff argues that, assuming the Court inquires and finds defendants to have their principal place of business in New York, they must be deemed citizens of New York under 28 U.S.C. § 1332(c).

This argument cannot be sustained. 28 U.S.C. § 1332(c) does not apply to corporations. Eisenberg v. Commercial Union Assur. Co., S.D.N.Y., 1960, 189 F.Supp. 500; Chemical Transportation Corp. v. Metropolitan Petroleum Corp., S.D.N.Y., November 13, 1964, 246 F.Supp. 563. See 1 Moore's Federal Practice § 0.77[2.–3].

### CONCLUSION

On the basis of the above opinion and in view of the facts adduced at the first stage of the trial, both quantitatively and qualitatively, we find insufficient contacts with the United States to justify application of the Jones Act.

Since Jones Act jurisdiction is the only jurisdiction invoked by plaintiff, our finding of inapplicability of the Jones Act requires dismissal of the "pendent" claims under the general maritime law.

Alternatively, as to the "pendent" claims, even had diversity existed, under the doctrine in Romero, we find insufficient contacts with the United States to justify application of the general maritime law.

In view of plaintiff's reliance on American law, foreign law having been neither pleaded nor asserted as a basis of relief, and no other jurisdictional ground appearing to the Court, the complaint, on the above opinion, is dismissed on the merits.

Submit order promptly on three (3) days notice.