Elias **TSAKONITES**, Plaintiff-Appellant,

v.

**TRANSPACIFIC CARRIERS CORP.** and
Hellenic Lines, Ltd., Defendants-
Appellees.

No. 288, Docket 29734.

United States Court of Appeals
Second Circuit.

Argued March 23, 1966.

Decided Nov. 16, 1966.

Waterman, Circuit Judge, dissented.

Herbert Lebovici, New York City
(Harold D. Safir, Lebovici & Safir, New
York City, on the brief), for plaintiff-
appellant.

Edwin K. Reid, New York City
(George D. Byrnes, Zock, Petrie, Shene-
man & Reid, New York City, on the
brief), for defendants-appellees.

James M. Estabrook, David P. H.
Watson, Haight, Gardner, Poor & Hav-
ens, New York City, for Kingdom of
Greece, the Union of Greek Shipowners
and the Chamber of Shipping of Greece,
as amici curiæ.

Before LUMBARD, Chief Judge, and
WATERMAN and MOORE, Circuit
Judges.

MOORE, Circuit Judge:

Plaintiff, a Greek seaman, brought suit
in the Southern District of New York,
relying entirely upon the Jones Act and
the general maritime law of the United
States. The District Court dismissed the
case on the merits on the grounds that
plaintiff had failed to establish the ap-
plicability of American law. From this
judgment plaintiff appeals.

The sole question presented on this ap-
peal is whether the Jones Act, 46 U.S.C.
§ 688, and the general maritime law of
the United States apply to an accident in
an American port to a foreign seaman on
a ship owned by a foreign corporation
and flying a foreign flag, where the prin-
cipal shareholder of the foreign corpo-

ration, though a foreign citizen, resides in America, and where the operations of the ship on which the injury occurred were controlled from this country.

Elias Tsakonites, a Greek citizen and domiciliary, the plaintiff-appellant, signed on as a member of the crew of the SS Hellenic Spirit under an agreement dated Piraeus, Greece, June 4, 1959, which provided that any claim arising from his employment was to be tried exclusively by the Greek law courts. Plaintiff boarded the Hellenic Spirit on June 5, 1959, at Herakleion, Crete. The ship was then on the outward leg of a voyage from Houston, Texas, to Rangoon, Burma, with numerous stops in between. After reaching Burma, the ship sailed back through the Red Sea and the Mediterraneans, stopping at New York and Philadelphia before finishing its inward voyage in Cuba. The accident which gave rise to the present suit occurred while the Hellenic Spirit was berthed at a pier in Brooklyn. On September 26, 1959, while descending a ladder from the main deck to the interior of a hold, plaintiff fell to the deck below. He was taken to the Lutheran Medical Center in Brooklyn, where he remained until January 20, 1960.

The Hellenic Spirit at all times relevant to this suit sailed under the Greek flag and was registered under the laws of Greece. Her crew and officers were almost entirely Greek. She was owned by the defendant Transpacific Carriers Corp., a Panamanian corporation wholly owned by the defendant Hellenic Lines, Ltd., a Greek corporation, over 96% of the shares of which were owned by Pericles G. Callimanopoulos, a Greek citizen, who first came to this country in 1945. From 1945 to 1956 or 1957, he spent part of his time here, first as a visitor, then as a treaty trader. In 1956 or 1957, he was admitted to the United States as a permanent resident.

With the exception of Callimanopoulos and his son, all of the officers and directors of Hellenic Lines reside in Greece as well as being Greek citizens. However, the directors from time to time vested in Callimanopoulos a broad power of attorney to run the company as General Manager.

Hellenic Lines maintains an office in Piraeus and a slightly smaller office in New York City, in addition to smaller offices in this country and abroad. In August 1959, the New York office employed 63 people at a payroll cost of approximately $28,000 per month. The company's annual statement was prepared in New York. Hellenic Lines maintains bank accounts in New York banks and has borrowed extensively from New York banks.

Hellenic Lines at the time of the accident operated from New York 22 or 23 vessels engaged in three liner services: to the Mediterranean; to the Persian Gulf; and to the Red Sea and India and Burma. The company's agents at ports of call reported to the New York office on all matters concerning these three liner services. The Hellenic Spirit was engaged in the Red Sea liner service.

The starting point of any discussion of the applicability of American law to seaman's accidents must be Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), in which the Supreme Court listed and appraised seven factors which should be considered in balancing the need for fairness to a plaintiff and the legitimate interests of the United States against the policies underlying international comity. Those seven factors are: the place of the wrongful act—a factor to which the Supreme Court attributed little weight, because of the disruptive effects adherence to such a standard would have upon the uniform regulation of shipboard activities;[1] the

---

1. See Romero v. International Term. Co., 358 U.S. 354, 384, 79 S.Ct. 468, 486, 3 L. Ed.2d 368 (1959):
 "To impose on ships the duty of shifting from one standard of compensation to another as the vessel passes the boundaries of territorial waters would be not only an onerous but also an unduly speculative burden, disruptive of international commerce and with-

law of the flag, which factor, the Supreme Court said, must prevail in the absence of some "heavy counterweight," and which generally accords with principles of comity; the allegiance or domicile of the injured party; the allegiance of the defendant shipowner; the place and terms of the contract; the relative inaccessibility of the foreign forum, a factor which the Court found relevant not on the issue of whether law is applicable but rather on whether the court after finding its own law inapplicable should apply the law of some other jurisdiction; and finally the law of the forum, to which the Court attributed very little weight.

*Lauritzen* did not attempt to indicate whether or not American law should apply under all combinations of listed factors not before the Court. Cases both before and after *Lauritzen,* however, have established that certain combinations of factors either are or are not enough to justify application of American law. See Note, Admiralty Choice of Law: Lauritzen v. Larsen Applied, 47 Va.L.Rev. 1400 (1961).

 The present case presents a combination of factors the significance of which is not conclusively established by existing cases. Defendants contend, and the trial court held, that the record reveals no factors "establishing a connection with the United States * * * sufficient to outweigh the 'venerable and universal rule'" which gives cardinal importance to the law of the flag, Tjonaman v. A/S Glittre, 340 F.2d 290, 292 (2d Cir.), cert. denied, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965). Plaintiff is an alien, who is not even an American resident. His employment contract by its terms limits his rights to those arising under Greek law—a factor to which weight must be given because it represents plaintiff's jurisdictional choice. Nor can, in this case, the Greek flag of the Hellenic Spirit be said to be a

"flag of convenience," within the meaning of cases like Bartholomew v. Universe Tankships Inc., 263 F.2d 437, 440 (2d Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959), and Southern Cross SS Co. v. Firipis, 285 F. 2d 651 (4th Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961). The Hellenic Spirit had contacts with Greece apart from being registered there and flying its flag. It stopped there to pick up crews, and not infrequently to discharge cargo. The officers and directors of the company which owned the ship were Greek, as were all of the shareholders of the parent company Hellenic Lines. Greece certainly has enough contacts with the ship so that our courts should hesitate out of considerations of comity before applying and foisting upon it the heavy potential liabilities of the American law of maritime personal injuries. Cf. McCulloch v. Sociedad Nacional de Marineros de Brazil, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963) (National Labor Relations Act does not apply to maritime operations of ships owned by foreign subsidiaries of American corporations, crewed by alien seamen).

In favor of jurisdiction are the facts that plaintiff was injured here and spent almost four months in an American hospital; that the headquarters of the ship's activities were located here; and that the general manager and 96% shareholder, although a Greek citizen, is a permanent resident here. The few courts which have previously passed upon the problem have attached considerable significance to the base of business operations, see *Southern Cross SS Co.,* supra, and Pavlou v. Ocean Traders Marine Corp., 211 F.Supp. 320, 322 (S.D.N.Y. 1962) (provision in contract between Greek seaman and Liberian corporation owned by Greeks, Canadians and Americans, stating that Greek law governs), as well as to the residence of the ultimate

out basis in the expressed policies of this country. The amount and type of recovery which a foreign seaman may receive from his foreign employer while

sailing on a foreign ship should not depend on the wholly fortuitous circumstance of the place of injury."

owners, id. But cf. Cruz v. Harkna, Admiralty No. 176–315, S.D.N.Y., Feb. 24, 1954, D.C., 122 F.Supp. 288 (Honduran law applies despite fact that some of ship's owners, all of whom were Estonian refugees, resided in America).

Wherever, as here, there are various factors to be weighed for and against jurisdiction, the decision must be controlled by the more weighty. This court in its recent *Tjonaman* decision, supra, faced a simlar problem and resolved it against jurisdiction in our courts. The Supreme Court has given no indication that the law of the flag (when not a flag of convenience) is still not to be considered of paramount importance. Also not to be ignored, is the fact that this Greek seaman whose residence is in Greece, who is or is not presumed to be familiar with the rights and privileges under Greek law of those who serve in the crew on Greek ships, signed articles in which he agreed to be subject to those laws. He doubtless did not have the slightest knowledge of the provisions of American statutes enacted for the benefit of American seamen by our Congress for their protection. It is not unfair to have him abide by his agreement. As said by the Greek government in its *amicus* brief with respect to these agreements: "These collective bargaining agreements contemplate the hiring of Greek seamen under Greek law aboard Greek flag vessels, and contemplate the payment to these seamen, in the event they are injured, of benefits under Greek law and in accordance with the Greek social welfare programs." International comity requires respect for such agreements.

Although plaintiff argued here that his right to a jury trial was violated by the district judge deciding the case on the basis of stipulated facts, we think it was clear that he agreed to have the issue of the application of United States law decided on the stipulations.

Dismissal affirmed.

WATERMAN, Circuit Judge (dissenting):

I respectfully dissent.

To me the present case presents a combination of factors that justifies the application of United States law rather than the municipal law of another nation. To be sure, the suit has been brought by a Greek alien seaman injured while serving aboard a vessel of foreign registry and ownership. But the accident occurred in the territorial waters of the United States while the S.S. Hellenic Spirit was berthed at the 57th Street pier, Brooklyn, New York. Furthermore, Hellenic Lines, Ltd., the foreign shipowner, has a substantial executive office in the United States, from which extensive ship operations are conducted. And, in my view, it is of the greatest importance that Callimanopoulos, the general manager of Hellenic Lines and the owner of more than 95% of Hellenic Lines stock, has regularly resided in the United States since 1945 and has enjoyed the status of a permanent resident alien here since 1956 or 1957.

United States courts have pierced through the facade of foreign registration and foreign incorporation and have applied United States law, including 46 U.S.C. § 688 application, when American-based shipowners who are United States citizens have sought the protection from seamen's suits of less onerous laws of foreign states and have registered their vessels elsewhere than here. E. g., Bartholomew v. Universe Tankships, Inc., 263 F.2d 437 and cases cited at 442 (2 Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138 (1959). I would hold that here, in this case, where the injury occurred at dockside in the United States, United States law should be applied when the defendant shipowner, though an alien, has continued to register his vessels abroad while he currently enjoys the considerable benefits of permanent resident alien status here, a status deliberately sought by him.[1] I cannot follow the

---

1. In the present case the fact that the defendant, Hellenic Lines, Ltd., is in-

corporated in Greece does not successfully disguise the fact that the corpora-

argument that, in this respect, the application of United States law to this event that occurred in our territorial waters should depend upon whether the vessel upon which the event occurred is owned by a United States citizen or is owned by a United States resident alien. We accord a lawful permanent resident alien the same constitutional protections we accord a citizen of the United States. See Kwong Hai Chew v. Colding, 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953). Moreover, the duties and obligations of a resident alien have not been thought to "differ materially from those of native-born or naturalized citizens." Leonhard v. Eley, 151 F.2d 409, 410 (10 Cir. 1945). To be sure, a resident alien in some respects does not have legal parity with a United States citizen; for example, the Constitution requires that only citizens may be candidates for election to the House of Representatives and to the Senate; and an alien may be sued in any U. S. judicial district. Nevertheless, established authority, see, e. g., Leonhard v. Eley, supra, suggests that any United States law, such as the Jones Act, that imposes duties and obligations upon persons, should be evenly applied to United States citizens and resident aliens.

So, unless the same obligations that United States law imposes on shipowners who are United States citizens are imposed on resident alien shipowners, a resident alien shipowner like Callimanopoulos will be able to enjoy the considerable benefits of lawful permanent resident alien status in this country without being subject to the duties and obligations exacted of an otherwise similarly situated competitive shipowner who is an American shipowner. The statement of

this last proposition would seem to be enough to require a reversal instead of an affirmance of the order below. Moreover, under these circumstances, I do not regard as significant the fact that when this Greek seaman signed on he agreed to limit his rights to those arising under Greek law. Surely we would not consider such to be decisive, or even important, if the shipowner behind the Greek-incorporated corporation was a United States citizen inasmuch as the accident occurred while the vessel was berthed at a New York harbor pier.

I repeat: Shipowners who are resident aliens and shipowners who are United States citizens should be subject to the same liabilities for injuries suffered by their employees on their vessels when the vessels are at United States piers. If a United States shipowner is liable under the Jones Act to a foreign seaman serving on a foreign-registered vessel injured in our territorial waters, a permanently resident alien should also be so liable.

I find no reported case denying a seaman his recovery in which the significant factors are enough similar to this case to require us to affirm the order below. In major part I agree with the exhaustive discussion of the authorities in the majority's opinion. Unlike the majority, however, I am not persuaded that here the ship had enough contacts with Greece so that we should hesitate "before applying and foisting upon [Callimanopoulos] the heavy potential liabilities of the American law of maritime personal injuries."

I would reverse the order below dismissing the action and remand for further proceedings.

tion is almost solely owned by a single individual and that that individual is a resident alien in the United States. This case does not involve the applicability

of our law to a corporation publicly owned by many individuals permanently residing in several different countries or even in one such country.