Dimitrios **PANDAZOPOULOS**, Plaintiff,

v.

**UNIVERSAL CRUISE LINE, INC., et al.,**
**Defendants.**

No. 69 Civ. 2621 JMC.

United States District Court,
S. D. New York.

Oct. 26, 1973.

Stephen S. Scopas, New York City, for plaintiff; Max Cohen, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants; David P. H. Watson, New York City, of counsel.

CANNELLA, District Judge.

The defendants' application, which is deemed to be a motion pursuant to Rule 39(a)(2) of the Federal Rules of Civil Procedure, is denied.

The issue before the court is whether the plaintiff in this seaman's personal injury action is entitled to a jury trial of his claims or whether he is limited to a non-jury trial within the scope of Rule 9(h) of the Federal Rules of Civil Procedure governing admiralty and maritime claims. The resolution of this question revolves around a determination by this court of the applicability of either the Jones Act, 46 U.S.C. § 688, or alternatively, the laws of the Republic of Panama to the causes of action asserted by the plaintiff. Subsidiary to this choice of law problem is a question of diversity of citizenship between the parties, which, if present, would also entitle the plaintiff to a jury trial. For the reasons set out below, it is the opinion of this court that the facts of this case allow the plaintiff to state a claim cognizable under the Jones Act, that the Jones Act and American maritime law provide the applicable law, to the exclusion of the law of the Republic of Panama, and that the plaintiff may proceed to a jury trial of his claims. In light of this conclusion, it is not necessary for the court to consider or pass upon the diversity of citizenship question raised.

The facts that give rise to the plaintiff's claim are not in dispute and may be simply stated. The facts necessary for a determination of the applicability of American law, namely, the ownership and control of the vessel, are more complex and are the subject of substantial dispute; these facts will be discussed below.

The plaintiff, Dimitrios Pandazopoulos, was at the time of his injury and is presently a Greek national residing in Greece. He was hired in Piraeus, Greece as an engineering member of the crew of the S/S Caribia, the vessel upon which his injuries were sustained. The S/S Caribia is registered in Panama and flies that nation's flag. At all relevant times it was owned by the defendant Universal Lines, S.A. (hereinafter Universal Lines) and operated by the defendant Universal Cruise Lines, S.A. (hereinafter Universal Cruise) both Panamanian corporations. On January 10, 1969, the plaintiff and other crew members signed standard-form Panamanian articles while the vessel was in Naples, Italy. On January 22, 1969, when the Caribia was again in Naples, the plaintiff and other crew members executed an agreement which made reference to employment under the terms of the Greek Collective Bargaining Agreement with regard to working conditions and wages. Both of these documents were executed in the presence of the Panamanian Consul in Naples.

The S/S Caribia arrived in the Port of New York on February 13, 1969

and departed for her first Caribbean cruise the next day. On February 28, 1969, the vessel was again in New York for a period of several hours before departing on a second cruise. On March 5, 1969, the plaintiff was injured while working in the ship's generator room, at a time when the vessel was on the high seas, some five hours out of the Port of St. Thomas, Virgin Islands. The plaintiff was treated for his injuries at a St. Thomas hospital and was subsequently flown to New York and, thereafter, repatriated to Greece.

■ The court must proceed with its inquiry into the choice of law issue presented in accordance with the seven factor approach set out by the Supreme Court in the landmark case of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). The seven enumerated *Lauritzen* factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum.

■ The *Lauritzen* test is not satisfied by a mechanical counting of contacts. Hellenic Lines v. Rhoditis, 398 U.S. 306, 308, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Rather, the court must utilize the seven factors as tools in an evaluative search for substantial contacts between the claim asserted and the United States and its law. A conclusion that the Jones Act or other American law is applicable to a maritime case involving foreign elements is warranted only if, as a result of its search, the court discovers a more than minimal nexus between the claim and the American forum. The contacts found need not be preponderant, but must be substantial. Bartholomew v. Universe Tankships, Inc., 263 F. 2d 437, 440 (2 Cir. 1959), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959).

Each contact or connecting factor present in a given case must be weighed by the court and the substantiality of the contacts is dependent upon the weight attributed to each. Judge Medina clearly stated the rule in the following terms:

> [T]he decisional process of arriving at a conclusion on the subject of the application of the Jones Act involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial. Thus each factor is to be "weighed" and "evaluated" only to the end that after each factor has been given consideration, a rational and satisfactory conclusion may be arrived at on the question of whether all the factors present add up to the necessary substantiality. Moreover, each factor, or contact, or group of facts must be tested in the light of the underlying objective, which is to effectuate the liberal purposes of the Jones Act.

Id. at 441 (quoted with approval in *Rhoditis, supra,* 398 U.S. at 309, f.n. 4, 90 S.Ct. 1731). It is against this background of well settled precedent that the instant case must be considered.

The first *Lauritzen* factor, the place of the wrongful act, is attributed little weight under the teachings of that case. This is especially so in instances such as this where the seaman's injury occurred on the high seas. "The test of location of the wrongful act or omission . . . is of limited application to shipboard torts, because of the varieties of legal authority over which she may navigate." 345 U.S. at 583, 73 S.Ct. at 929. *See also,* Romero v. International Terminal Co., 358 U.S. 354, 384, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

The second and fourth factors enumerated by the court in *Lauritzen,* the law of the flag and the allegiance of the defendant shipowner, are the crucial, determinative points of contact on the issue presently before the court and the court believes that it is well advised to defer their discussion until after other,

less significant, factors have been presented and evaluated.

The allegiance or domicile of the injured seaman is the third factor to be analyzed under the *Lauritzen* approach. It is not disputed that the present plaintiff is a Greek national who has always maintained his home in Greece. Although this fact is weighed against the applicability of the Jones Act, it is not determinative of the choice of law issue. *See, Lauritzen, supra,* 345 U.S. at 586–587, 73 S.Ct. 921; *Rhoditis, supra,* 398 U.S. 306, 308, 90 S.Ct. 1731, 26 L.Ed.2d 252. The weight accorded to this factor in the present case is further diminished because the question before the court involves a choice between American and Panamanian law, neither of which is related to the plaintiff's domicile in Greece. *See,* Groves v. Universe Tankships, Inc., 308 F.Supp. 826, 831 (S.D. N.Y.1970).

█ █ The fifth factor, the place of the contract, bears little weight in the resolution of maritime personal injury choice of law. In *Lauritzen* the Supreme Court clearly stated this rule, "[w]e do not think the place of contract is a substantial influence in the choice between competing laws to govern a maritime tort." 345 U.S. at 589, 73 S. Ct. at 932. The facts of this case demonstrate that the plaintiff joined the ship in Greece and formally executed the contractual documents in Italy. The shipping articles which the plaintiff signed contained a choice of law clause invoking Panamanian law. A contractual choice of law clause which adopts the law of the flag state as the governing law between the parties to a contract may be properly invoked in instances of personal injury claims except when to do so would act to avoid the application of other, more naturally applicable law. Id. at 589, 73 S.Ct. 921. The court refuses to find the present choice of law clause controlling because to do so would serve to oust otherwise applicable law in favor of flag-state law in an instance where the flag is merely a flag of convenience, as in demonstrated below, and because the circumstances of this case weigh in favor of invoking the law of another nation. Additionally, the court is of the opinion that the weight of the instant contractual provision must be minimized in light of a settled judicial policy against the applicability of such clauses in a case of this nature. *See Rhoditis, supra,* 398 U.S. at 310, 90 S.Ct. 1731; Voyiatzis v. National Shipping & Trading Corp., 199 F.Supp. 920, 925 (S.D.N.Y.1961); Pavlou v. Ocean Traders Marine Corp., 211 F.Supp. 320, 322–323 (S.D.N.Y.1962); *Groves, supra,* 308 F.Supp. at 831.[1]

█ The sixth and seventh factors, the inaccessibility of the foreign forum and the law of the forum, are not weighty factors in choice of law situations. The inaccessibility of the foreign forum is mitigated by the availability of American admiralty jurisdiction over a claim arising under foreign maritime law. The law of the forum, the Jones Act, does not become a factor in the choice of law process simply because jurisdiction over the parties has been obtained by the American court. *See, Lauritzen, supra,* 345 U.S. at 589–591, 73 S.Ct. 921; Tsakonites v. Transpacific Carriers Corp., 368 F.2d 426, 428 (2 Cir. 1966); Southern Cross Steamship Co. v. Firipis, 285 F.2d 651, 653 (4 Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961).

█ The court has previously referred to the second and fourth *Lauritz-*

---

1. For the reasons set out above, the court is of the opinion that Bassis v. Universal Line, S. A., 322 F.Supp. 449 (E.D.N.Y.1970), affirmed, 2 Cir., 436 F.2d 64, is not controlling here. That case involved wage claims brought by the crewmen of the S/S Caribia including the plaintiff herein, against defendant Universal Lines. The court held that the claims there asserted were governed by Panamanian law pursuant to the terms of the shipping articles. That case did not involve personal injury claims and to hold that decision controlling here would be contrary to the authorities cited above and the purposes of the Jones Act.

*en* factors, the law of the flag and the allegiance of the defendant shipowner, as those upon which the court's decision is premised. The facts constituting these relationships arise from a series of intricate financial arrangements and the creation of numerous corporate forms, a chronology of which has been presented to the court by the defendants.

The S/S Caribia, formerly the R.M.S. Caronia, was built in Great Britain in 1948 for the Cunard Steamship Company. She is a passenger and cruise vessel weighing some 34,000 gross tons. In 1968 a purchase agreement for the R.M.S. Caronia was entered into between Cunard and Star Lines, S.A., a Panamanian corporation wholly owned by Andrew Konstantinidis, a Turkish citizen. Star Line made a ten percent down payment of the purchase price in May 1968 and gave Cunard a first mortgage on the vessel in the sum of $1,500,000. Star Line then entered into negotiations with the Anglo-Portuguese Bank for a $2,350,000 second mortgage. The bank requested additional security for its loan and further guarantors. Two new Panamanian corporations were then formed, Universal Lines and Universal Cruise. The stock of Universal Lines, the prospective owner of the vessel, was owned equally by the Franchard Corporation and Great Universal Development, both domestic (New York) corporations, both of which acted as guarantors for the second mortgage. Fifty percent of the stock of Universal Cruise, the prospective operating company, was held by Universal Lines and the other fifty percent was owned by Atlas International, a foreign corporation wholly owned by Mr. Konstantinidis.

On June 10, 1968, Star Line assigned its purchase agreement with Cunard to Universal Lines and the R.M.S. Caronia was delivered by Cunard to Universal Lines on July 28 of that year. The new owners renamed her the S/S Columbia and later the S/S Caribia, registered the vessel in Panama and caused her to fly that nation's flag.

The defendants urge that the foregoing facts demonstrate that Universal Lines and Universal Cruise were nothing more than holding companies which had been formed to serve as guarantors of the second mortgage and to meet the financial need of Mr. Konstantinidis, the prime mover of this venture. They assert that these two companies would continue to function only until such time as Mr. Konstantinidis' Star Line was in a financial position to assume ownership and control of the vessel. The defendants point to Mr. Konstantinidis' fifty percent ownership in Universal Cruise and his managerial position in the operation of the ship, as well as to a reconveyance of the vessel to Star Line at a time subsequent to plaintiff's injury, as evidence of the Caribia's true ownership. In this fashion, the defendants seek to minimize the fact that the vessel, at the time of the plaintiff's injury, was owned entirely by American corporate interests.

The defendants' response to certain interrogatories posed by the plaintiff, the record ownership of the vessel, and certain admissions made by the defendants belie the position they now assert. On its face Universal Lines is a Panamanian corporation. In reality, the entire beneficial ownership of Universal Lines is in the hands of two American corporations. Similarly, fifty percent beneficial ownership of Universal Cruise is American. At the time of the plaintiff's accident, all directors and officers of Universal Lines were citizens of the United States and residents of New York.[2] The same was true for Universal Cruise except that Mr. Konstantinidis served as its President.[3] The defendants admit that at all relevant times the base of operations of both corporations was New York City.[4] All named bank accounts of both companies were located in this country.[5] Mr. Konstan-

---

2. Answers to Plaintiff's Interrogatories, No. 57.

3. Id.

4. Id., No. 60.

5. Id., No. 79.

tinidis acknowledges that he maintained an office in New York.[6] Universal Cruise, the operating company, maintained an office in New York City, while Universal Lines did not maintain an office in New York or elsewhere.[7] The only two voyages of the S/S Caribia were from and to the Port of New York and most passengers on these cruises were from the United States.[8] Mr. Konstantinidis continues to reside on the vessel which has been moored at a New York pier ever since she returned from the voyage on which the plaintiff was injured.[9]

In similar fashion, the defendants response to the plaintiff's interrogatories clearly demonstrate that no relationship between the defendant corporations or the vessel and the Republic of Panama exists other than the simple acts of incorporation of the defendants there and the bare registry of the S/S Caribia under Panamanian law. Neither Universal Lines nor Universal Cruise has maintained offices, employees or any other commercial contact with Panama and the vessel has never called at a Panamanian port or entered the territorial waters of that nation since it was registered there.[10]

Numerous courts that have considered the fourth *Lauritzen* factor, the allegiance of the defendant shipowner, have looked behind the facade of foreign incorporation and have concluded that the shipowner's allegiance must be placed with that of its American beneficial owners. *See, Lauritzen, supra,* 345 U.S. at 587, 73 S.Ct. 921; *Bartholomew, supra,* 263 F.2d at 442; *Southern Cross Steamship Co., supra,* 285 F.2d at 653–654; Bobolakis v. Compania Panamena Maritima San Gerassimo, 168 F.Supp. 236, 237–239 (S.D.N.Y.1958); Rodriguez v. Solar Shipping, Ltd., 169 F.Supp. 79, 81 (S.D.N.Y.1958); Voyiatzis v. National Shipping & Trading Corp., 199 F.Supp. 920, 924–925 (S.D.N.Y.1961); Pavlou v. Ocean Traders Marine Corp., 211 F.Supp. 320, 324–325 (S.D.N.Y. 1962); Groves v. Universe Tankships, Inc., 308 F.Supp. 826, 832 (S.D.N.Y. 1970). *See also,* 2 M. Norris, The Law of Seamen, § 686, at 360 (3 ed. 1970); Note, Recovery Under the Jones Act for Foreign Seamen: The Demise of the Law of the Flag, 49 N.C.L.Rev. 320, 323–324 (1970). Cf., McCulloch v. Sociedad Nacional, 372 U.S. 10, 19, f. n. 9, 83 S.Ct. 671, 9 L.Ed.2d 547 (1962). This practice of piercing the facade of foreign incorporation in order to prevent avoidance of the Jones Act was well stated by Judge Medina in the Bartholomew case. 263 F.2d at 442.

[T]he practice in this type of case of looking through the facade of foreign registration and incorporation to the American ownership behind it is now well established. [citations omitted] This is essential unless the purposes of the Jones Act are to be frustrated by American shipowners intent upon evading their obligations under the law by the simple expedient of incorporating in a foreign country and registering their vessels under a foreign flag. See Lauritzen, 345 U.S. at page 587, 73 S.Ct. at page 930. In the case now before us appellant has taken the trouble to insert an additional nominal foreign corporation between the flag and the true beneficial ownership of the vessel. But we have little difficulty in brushing all this aside when considering the applicability *vel non* of the Jones Act. Complicating the mechanics of evasive schemes cannot serve to make them more effective. What we now do is not to disregard the corporate entity to impose liability on the stockholders, but rather to consider a foreign corporation as if it were an American corporation pursu-

6. Konstantinidis Affidavit, ¶ 16.

7. Answers to Plaintiff's Interrogatories, No. 93.

8. Id., No. 70.

9. Konstantinidis Affidavit, ¶ 1.

10. Answers to Plaintiff's Interrogatories, Nos. 64, 67, and 93.

ant to the liberal policies of a regulatory act.

The court is convinced that the weight of these precedents compel the conclusion here that the allegiance of the defendant shipowners is to the United States and that the facts surrounding the vessel's ownership and operation exert substantial weight in favor of the applicability of the Jones Act to the plaintiff's claim.

Another element was grafted on to the *Lauritzen* fourth factor by the Supreme Court in Hellenic Lines v. Rhoditis, the shipowner's *base of operations.* 398 U. S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Cases both before and after .the *Rhoditis* decision have accorded the base of operations significant weight in resolving choice of law issues, especially when the base coincides with the allegiance of the shipowner. *See Pavlou, supra,* 211 F.Supp. at 325; *Groves, supra,* 308 F.Supp. at 832. In the instant case the defendants have admitted that New York was their base of operations and the court must consider this factor as strongly favoring the application of the Jones Act.

The only *Lauritzen* factor remaining to be considered is the law of the flag. The Supreme Court has made it clear the law of the flag-state "must prevail unless some heavy counterweight appears." *Lauritzen, supra,* 345 U.S. at 586, 73 S.Ct. at 930. *Lauritzen* and later cases have made it equally clear that the law of a flag of convenience state is not entitled to the same conclusive effect as that of a "legitimate" flag state and cannot be used to oust otherwise applicable law. *See, Lauritzen, supra,* 345 U.S. at 587, 73 S.Ct. 921; *Bartholomew, supra,* 263 F.2d 437; *Southern Cross, supra,* 285 F.2d at 653–654; *Bobolakis, supra,* 168 F.Supp. at 237–238; *Voyiatzis, supra,* 199 F.Supp. at 923; *Groves, supra,* 308 F.Supp. at 830–832. *See also,* 2

M. Norris, *supra,* § 687. The facts of the present case reveal no significant contacts or relationships between the vessel, the defendants and the Republic of Panama, and clearly demonstrate that the registry of the S/S Caribia under the laws of that nation was· premised solely upon the interests of convenience. This conclusion is equally valid whether viewed from the standpoint of the American beneficial owners or of Mr. Konstantinidis, the Turkish manager of this shipping venture. The court finds the flag flown by the S/S Caribia to be a "flag of convenience" and, accordingly, refuses to hold the law of the flag conclusive on the instant choice of law issue.

For the reasons set out above, it is the conclusion of this court that the foreign incorporation of these defendants and the foreign registration of the vessel are a facade designed to disguise American beneficial ownership, operation and control and to avoid the consequences of the American shipping laws. The beneficial ownership of the defendants by American interests and the location of the defendants' base of operations in New York are substantial contacts with the United States and are the "heavy counterweight" necessary to overcome the law of the flag which is, on the facts of this case, a mere flag of convenience. The teachings of *Lauritzen, Bartholomew* and the cases subsequently decided clearly require this court to hold that the Jones Act is applicable to the claim asserted by the plaintiff and that the plaintiff is, therefore, entitled to proceed to a jury trial, pursuant to the terms of that statute.

It is the order of this court that the instant action be maintained as a civil jury case and that the case be placed on the ready calendar of this court, subject to immediate trial, thirty days from the date of this opinion.

So ordered.