Carlos Rene **FLORES**, Plaintiff,

v.

**CENTRAL AMERICAN STEAMSHIP AGENCY INC., Adderly Navigation Co. Panama S.A. and Olympic Maritime S.A., Defendants.**

**No. 81 Civ. 0954 (JES).**

United States District Court, S.D. New York.

Oct. 15, 1984.

Thomas M. Breen, New York City, for plaintiffs.

Healy & Baillie, New York City, for defendants; John R. Geraghty, John P. James, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiff, a Honduran seaman, has sued under the Jones Act, 46 U.S.C. § 688 and general American maritime law or, alternatively, Liberian law, for personal injuries allegedly sustained while serving aboard the M.V. Olympic Pride. The issue before the Court is what law should apply to this action. Also before the Court are defendants' motions to dismiss the Jones Act claims and the claims under general American maritime law.

The relevant facts are as follows. Defendants are the shipowner, Adderly Navigation Co. Panama S.A. ("Adderly"), a Panamanian corporation owned by a Liberian corporation, with offices in Panama; the operating agent, Olympic Maritime S.A. ("Olympic"), a Panamanian corporation with its principal offices in Monaco; and Central American Steamship Agency, Inc. ("Central"), a New York corporation with offices in New York. Central is apparently the ship's husbanding agent. The vessel sails under the Liberian flag. Plaintiff signed an employment contract in Honduras with Springfield Shipping Co. Panama S.A. ("Springfield") as agent for Olympic, which provides that Greek law shall apply in case of accident to plaintiff during his service on board the vessel. Springfield, which is not a party to this action, is a

Panamanian corporation with its principal place of business in Greece. Plaintiff joined the Olympic Pride on or about July 11, 1977 in Philadelphia. On February 26, 1978 plaintiff allegedly was injured when he slipped and fell on the deck of the ship, while discharging wheat at Port Said, Egypt.

*Discussion*

■ In determining whether the Jones Act and general American maritime law apply, the court must look to whether this action has any substantial contact with the United States. *E.g., Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09 & n. 4, 90 S.Ct. 1731, 1733–34 n. 4, 26 L.Ed.2d 252 (1970); *Romero v. International Terminal*, 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1958); *Lauritzen v. Larsen*, 345 U.S. 571, 582–592, 73 S.Ct. 921, 928–933, 97 L.Ed. 1254 (1953); *Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470, 472 (2d Cir.), *cert. denied*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 440–41 (2d Cir.1959). In making this determination, the Supreme Court has identified a number of factors to consider: (1) the place of the wrongful act; (2) the law of the flag; (3) the domicile of the injured seaman; (4) the allegiance of the shipowner; (5) the base of operations of the shipowner; (6) the place the seaman entered into his employment contract; (7) the inaccessibility of a foreign forum; and (8) the law of the forum. *Hellenic Lines, supra*, 398 U.S. at 308–09, 90 S.Ct. at 1733–34; *Lauritzen supra*, 345 U.S. at 582–92, 73 S.Ct. at 928–33. The factors which have been considered most important by the courts are the law of the flag, provided it is not a flag of convenience, and the allegiance or base of operations of the shipowners. *See, e.g., McCulloch v. Sociedad Nacional*, 372 U.S. 10, 19 n. 9, 83 S.Ct. 671, 676 n. 9, 9 L.Ed.2d 547 (1963); *Hellenic Lines, supra*, 398 U.S. at 309–10, 90 S.Ct. at 1734–35; *Lauritzen, supra*, 345 U.S. at 585–86, 587–88, 73 S.Ct. at 929–30, 930–31; *Tjonaman v. A/S Glittre*, 340 F.2d 290, 291–92 (2d Cir.), *cert. denied*, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965); *Pandazopoulos v. Universal Cruise Line, Inc.*, 365 F.Supp. 208, 210–11 (S.D.N.Y.1973).[1]

■ None of these factors indicate a substantial connection between this action and the United States. The only contacts with this country are that plaintiff joined the vessel in Philadelphia, and that Central is a New York corporation with its offices in New York. While plaintiff alleges in his complaint that *all* defendants are owned or controlled by Americans and have a principal base of operations in New York, *Complaint ¶¶* Eighth & Ninth, plaintiff has offered no proof to support this claim. Defendants' answers to plaintiff's interrogatories state that Adderly and Olympic have no American ownership, control or base of operations. Moreover, the deposition testimony of Creon Broun, Executive Vice President and Treasurer of Central, state that Central was merely a husbanding agent for Olympic. This clearly is not sufficient to render the Jones Act or general American maritime law applicable to this case. *See, e.g., ManLugon v. A/S Facto*, 419 F.Supp. 550, 552 (S.D.N.Y.1976); *Koupetoris v. Konkar Intrepid Corp.*, 402 F.Supp. 951, 954 (S.D.N.Y.1975), *aff'd*, 535 F.2d 1392 (2d Cir.1976); *see also Romero, supra*, 358 U.S. at 356, 381–84, 79 S.Ct. at 485–86 (no substantial contact with United States; shipowner had American husbanding agent); *Tjonaman, supra*, 340 F.2d at 292

1. The courts have recognized that certain factors are not very significant. These are: the place of injury, because this is fortuitous, *see Romero, supra*, 358 U.S. at 383–84, 79 S.Ct. at 486–87, *citing Lauritzen, supra*, 345 U.S. at 583–84, 73 S.Ct. at 928–29; *Moncada, supra*, 491 F.2d at 472–73; the place where the seaman's contract of employment was entered into, because this is also fortuitous, and because these are tort, rather than contract actions, *see Lauritzen, supra*, 345 U.S. at 588–89, 73 S.Ct. at 931–32; *Moncada, supra*, 491 F.2d 472–73; the inaccessability of a foreign forum, *see Lauritzen, supra*, 345 U.S. at 589–91, 73 S.Ct. at 931–32; *Moncada, supra*, 491 F.2d 472–73; and the law of the forum, *see Lauritzen, supra*, 345 U.S. at 590–91, 73 S.Ct. at 932–33; *Pandazopoulos, supra*, 365 F.Supp. at 211.

(same; shipowner had general agent in America).

■ Plaintiff claims that this Court is obliged to apply American law, and particularly the Jones Act, because the United States is a signatory to the Shipowners' Liability (Sick and Injured Seamen) Convention of 1939. This argument lacks merit. If that Treaty requires that American courts apply American law to all foreign seamen suing in American courts despite the lack of any substantial connection between the action and the United States, then the above mentioned analysis of factors required by *Lauritzen, Romero,* and *Hellenic* would be an exercise in futility. A more rational interpretation of the Treaty is that it requires the United States not to discriminate against foreign seamen. It does not entitle them to have United States law applied in all instances no matter how tenuous or non-existent their contact with the United States.

■ Plaintiff further argues that if the law of the United States is not applicable, then Liberian law should apply because this is both the law of the flag and of the place of allegiance of the shipowner. The Court agrees. While defendants note that the law of the flag has often been overridden, none of the policy reasons courts have cited for ignoring the law of the flag are present in this case. *See, e.g., Hellenic, supra,* 398 U.S. at 310, 90 S.Ct. at 1734; *Bartholemew, supra,* 263 F.2d at 442.

Defendants contend that the law of Honduras should apply, as plaintiff is a Honduran citizen and domiciliary, he signed his employment contract in Honduras, and Honduras is also the residence of a Honduran seaman who allegedly witnessed plaintiff's accident. The Court disagrees. The presence of an alleged witness is irrelevant to the choice of law issue, and the place of contract has not been considered an important factor. *See* note 1, *supra.*

■ While it is significant that plaintiff is Honduran, the law of the seaman's domicile generally does not prevail over the law of the flag and the place of the shipowner's allegiance. *See, e.g., Tjonaman, supra,* 340 F.2d at 291–92; *Rivadeneira v. Skibs A/S Snefonn,* 353 F.Supp. 1382, 1386 (S.D. N.Y.1973).

Defendants alternatively argue that Greek law should apply, because of the choice of law clause in plaintiff's employment contract. While *Lauritzen* indicates that such clauses generally may be respected, *see* 345 U.S. at 588–89, 73 S.Ct. 931–32; in that case the contract provided that the law of the flag would govern, and all other contacts pointed to applying that law. Courts have recognized that a choice of law clause is not entitled to presumptive enforcement where other factors favor the application of another nation's law. *See, e.g., Hellenic, supra,* 398 U.S. at 308, 310, 90 S.Ct. at 1733, 1734, *Pandazopoulos, supra,* 365 F.Supp. at 211. . The Court also notes that Springfield has its principal offices in Greece, however this is not enough to indicate that Adderly or Olympic center their operations in Greece, and clearly does not outweigh the substantial contacts with Liberia.

The Court therefore holds that Liberian law shall apply in this action. Defendants' motions to dismiss plaintiff's Jones Act claims and claims under general American maritime law are granted.

The parties shall file a joint Pre-Trial Order on or before December 3, 1984. All parties shall be ready for trial on January 2, 1985, and thereafter shall be prepared to proceed on forty-eight (48) hours notice by the Court.

It is SO ORDERED.